**STATE of Tennessee, Appellee,**

v.

**Robert E. BROWN, Appellant.**

Court of Criminal Appeals of Tennessee, at Jackson.

Sept. 11, 1991.

No Permission to Appeal Applied for to the Supreme Court.

Hughie Ragan, Jackson, for appellant.

Charles W. Burson, Atty. Gen. of Tennessee, Joel W. Perry, Asst. Atty. Gen., Nashville, and Jerry Woodall, Dist. Atty. Gen. and Roger D. Moore, Asst. Dist. Atty. Gen., Jackson, for appellee.

## OPINION

TIPTON, Judge.

The defendant, Robert E. Brown, was convicted by a jury in the Circuit Court for Madison County of possession with intent to sell cocaine for which he was sentenced to four years in the workhouse as a Range I, standard offender. He was ordered to pay a five thousand dollar fine. In this appeal as of right, the defendant attacks the sufficiency of the evidence and asserts other errors dealing with the following issues:

(1) Was the state required to elect which cocaine, found in different locations, formed the basis of the offense submitted to the jury?

(2) Was improper evidence of other crimes by the defendant admitted into evidence?

(3) Did trial court statements to defense counsel improperly prejudice the defendant?

(4) Was the defendant entitled to disclosure of the identity of a confidential informant?

(5) Was the defendant entitled to probation or a community corrections sentence?

The defendant was charged in one count with felonious possession of cocaine. The case related to activities occurring in February, 1989, at three buildings located next to each other at the intersection of Harris Street and Boone Street in Jackson, Tennessee. The buildings consisted of a residence at 219 Harris Street, a residence at 141 Boone Street, and a garage or automobile workshop situated between the two residences.

Robert Bond testified that his sister owned the Harris house, but was out of town for several months. He said that no one was living there in February, 1989. Mr. Bond said that he lived elsewhere, but he would go over to the house to meet with a girl, Ms. Chapman. He denied having a key to the place. He testified that he gave the only key for the padlock on the front door to the defendant, who went by the nickname "Son."

Mr. Bond said that the defendant worked at the garage next door and had told Mr. Bond that the key was to allow the defendant to use the bathroom in the Harris house. Mr. Bond said that when he wanted access to the house, he would get the key from the defendant. He denied possessing any cocaine in the house and said that he had not seen the defendant possess, sell or use cocaine. However, he stated that Ms. Chapman had used cocaine in the Harris

house, but he did not know its source. He said that one Joe Mays owned both the garage and the house located at 141 Boone Street.

Sergeant Mark Caldwell, Madison County Sheriff's Department, testified about his surveillance of the properties from February 20 through February 22, 1989. He said that he saw cars coming and going and staying a very short period of time at the garage. There were people standing around including the defendant. On the night of February 21, a female confidential informant was equipped with a radio transmitter and sent to the Boone house. Sgt. Caldwell maintained surveillance outside with a receiver. He stated that he heard the informant say "Son" and recognized the defendant's voice. He heard the defendant say "I'll be right back." Then, he saw the defendant leave the Boone house and return shortly thereafter, although he could not see where the defendant had gone. He testified that he "heard" the defendant sell the informant "dope." Sgt. Caldwell stated that the informant then turned cocaine over to him.

On the night of February 22, Sgt. Caldwell and Officer Mike Johnson, Jackson Police Department, conducted surveillance of the three buildings from different vantage points. Sgt. Caldwell saw cars drive up and, each time, the defendant went to the Harris house and returned to the garage. He stated that he, also, saw the defendant urinate by a car outside the garage. At one point, Sgt. Caldwell saw the defendant go to the back door of the Boone house and talk to Joe Mays. The same informant, with transmitter, was sent back to the Boone house. Sgt. Caldwell said that he heard an unidentified voice instruct her. Then, the informant went to the garage, at which point the defendant went back to the Harris house. Sgt. Caldwell stated that the informant returned to him with more cocaine. He testified that the street value of cocaine at that time was one hundred dollars per gram.

Search warrants were obtained for the three buildings and executed that night. At the Harris house, six small plastic bags of cocaine were found in two coats in a closet and two such bags of cocaine were found under loose carpet in the bathroom. These substances totaled 16.8 grams. Another bag, found on the kitchen table, contained 31.5 grams of a white powder which did not contain cocaine. A search of the garage yielded .98 grams of cocaine in a plastic bag on a wall brace which was near the defendant's location when the searches began. A key was found on the defendant which opened the padlock to the Harris house. Also, an unidentified person was arrested in the Boone house for possession of cocaine and drug paraphernalia found on his person.

The defendant called Ms. Chapman, who testified that she used to date Robert Bond and that he stayed at the Harris house. She stated that both Bond and the defendant had keys to the padlock. She said she was not aware of the defendant being involved with cocaine, but Mr. Bond had given her some at the house. She acknowledged that others, not just the defendant, worked in the garage between the two houses. She said Joe Mays lived in the Boone house. Joe Mays' half-brother, Jim Anderson, testified that Mays owned the garage and rented the Boone house. He said he had never seen the defendant in the Boone house.

The defendant testified that he did not use, possess or sell cocaine. He said he had never been in the Boone house until the police took him there the night of his arrest. He stated that he was in the garage watching t.v. at the time of the raid. He admitted having a key to the Harris house, but said the coats in the closet were not his. He said that the previous owner of the house was in jail for cocaine. He explained that he only used the bathroom facilities in the house and denied going to the bathroom outside as claimed by Sgt. Caldwell. Also, he denied having met Sgt. Caldwell before the raid.

In rebuttal, Sgt. Caldwell testified that he had met the defendant twice before, once at the police department and once at another place in serving a search warrant. He said he knew the defendant's voice and

recognized it during the transactions with the informant.

■ When the sufficiency of the evidence is questioned on appeal, the standard of review is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979). In such regard, the state is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn from it. *State v. Cabbage,* 571 S.W.2d 832, 835 (Tenn.1978). Likewise, the determination of the weight and credibility of the testimony of witnesses and reconciliation of conflicts in that testimony are entrusted exclusively to the trier of fact, in this case the jury. *State v. Sheffield,* 676 S.W.2d 542, 547 (Tenn.1984); *Byrge v. State,* 575 S.W.2d 292 (Tenn.Crim.App.1978). Thus, this Court cannot reweigh the evidence, but must presume that the conflicts in the evidence were resolved in favor of the state.

Relative to drug possession cases, a conviction may be had upon either actual or constructive possession. *State v. Cooper,* 736 S.W.2d 125 (Tenn.Crim.App.1987). *Cooper* contains an excellent summary of what constitutes constructive possession and the method by which the evidence must be viewed in making a determination of constructive possession.

Before a person can be found to constructively possess a drug, it must appear that the person has "the power and intention at a given time to exercise dominion and control over ... [the drugs] either directly or through others." *State v. Williams,* supra [503 F.2d 50 (6th Cir. 1974)] quoting from *United States v. Craig,* 522 F.2d 29 (6th Cir.1975). See *United States v. Holland,* 445 F.2d 701, 703 (D.C.Cir.1971). In other words, "constructive possession is the ability to reduce an object to actual possession." *State v. Williams,* supra, quoting from *United States v. Martinez,* 588 F.2d 495 (5th Cir.1979). See *Harris v. Blackburn,* 646 F.2d 904, 906 (5th Cir.1981). The

mere presence of a person in an area where drugs are discovered is not, alone, sufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn,* 646 F.2d 904, 906 (5th Cir. 1981). See *Dishman v. State* [3 Tenn.Cr. App. 725] 460 S.W.2d 855, 858 (Tenn. Crim.App.1970); *Whited v. State,* 483 S.W.2d 594 (Tenn.Crim.App.1972). Likewise, mere association with a person who does in fact control the drugs or property where the drugs are discovered is insufficient to support a finding that the person possessed the drugs. *Harris v. Blackburn,* supra. See *Dishman v. State,* supra; *Whited v. State,* supra.

We recognize that a criminal offense may be established exclusively by circumstantial evidence. *Marable v. State,* 203 Tenn. 440, 313 S.W.2d 451 (1958); *State v. Hailey,* 658 S.W.2d 547, 552 (Tenn.Crim.App.1983). However, before an accused may be convicted of a criminal offense based upon circumstantial evidence alone, the facts and circumstances "must be so strong and cogent as to exclude every other reasonable hypothesis save the guilt of the defendant." *State v. Crawford,* 225 Tenn. 478, 470 S.W.2d 610, 612 (1971). In other words, "[a] web of guilt must be woven around the defendant from which he cannot escape and from which facts and circumstances the jury could draw no other reasonable inference save the guilt of the defendant beyond a reasonable doubt." *State v. Crawford,* supra, 470 S.W.2d at 613.

736 S.W.2d at 129.

In this case, there was proof of two cocaine sales by the defendant under circumstances reflecting that he went to the Harris house to retrieve the drugs. He had continuing access to the house since he had the key to the lock. The regular sequence of activity by which cars would stop at the garage, the defendant would go to the Harris house, then return to the garage, followed by the cars leaving is consistent with drug trafficking. The jury could easily credit Mr. Bond's denial of drug involvement and conclude that the defendant was the only person with access

who, to the exclusion of others, would keep cocaine in the Harris house. Further, all of these circumstances and the close proximity of the cocaine discovered in the garage to the defendant, when the search was conducted, provide telling evidence regarding his connection with the cocaine in the garage. As to both locations, the jury could rationally conclude beyond a reasonable doubt that the defendant had the power and intention to exercise dominion and control over the cocaine with the ability to reduce it to actual possession for the purpose of selling it.

■ Next, the defendant asserts that the trial court should have required the state to elect the offense which it was submitting to the jury. At the end of all the proof, before the trial court instructed the jury, the following exchange occurred:

> MR. RAGAN: If Your Honor please, my first motion is that the State be required to elect upon what offense it is attempting to receive [sic] in this case because there's more than one alleged offense shown in the proof, according to what the State is saying.
>
> THE COURT: All right. The State is going to rely upon the offense of possession of cocaine, possession of cocaine, a Schedule II controlled substance, with intent to sell and/or deliver, or the lesser included offense of possession of cocaine.
>
> MR. RAGAN: Well we submit that the location makes a difference. We say that there are three different alleged offenses here.
>
> THE COURT: This is the only one we're going to charge on that one, Mr. Ragan.
>
> MR. RAGAN: Yes, sir, but at what location? It's my contention at this time that the State should be required to elect which one of those three alleged places that the said alleged cocaine was found.
>
> THE COURT: Overruled.

The defendant relies upon *State v. Brown*, 762 S.W.2d 135 (Tenn.1988) in which the Supreme Court reversed an aggravated sexual battery conviction because the state did not elect which of two separate incidences it would submit for the jury's con-

sideration. *Brown*, citing *Burlison v. State*, 501 S.W.2d 801 (Tenn.1973), discussed the problems created when the state presents proof reflecting the existence of more than one offense of the same type when the trial relates to an indictment which is not specific as to the offense for which the accused is being tried. As stated in *Brown:*

> The reasons for the requirement of election is [sic] (1) to enable the defendant to prepare for and make his defense to the specific charge; (2) to protect him from double jeopardy by individualization of the issue and; [sic] (3) so that the jury's verdict may not be a matter of choice between offenses with some jurors convicting on one offense and others on another.

*Id.* at 137. *Brown* noted that the necessity for an election "is fundamental, immediately trenching [on] the constitutional rights of an accused." *Id.* at 137.

A distinction which might exist between *Brown* and this case is that *Brown* dealt with more than one offense. Here, the evidence dealing with the defendant's simultaneous possession of cocaine located on adjoining property, under circumstances showing his regular use of the properties in a scheme to cache, retrieve and distribute cocaine, does not lend itself easily to the presence of multiple possession offenses.

In *Zimmerman v. State*, 173 Tenn. 673, 122 S.W.2d 436 (1938) the accused was convicted on two charges of unlawful possession of intoxicating liquor under proof showing that, in the same search, liquor was found in the accused's icebox and in his car parked on the premises. Our Supreme Court held that the presence of the liquor in the icebox and in the car, on the same premises, at the same time, constituted only one offense of possession. In *State v. Christensen*, 205 Iowa 849, 216 N.W. 710 (1927), quoted with approval in *Zimmerman*, liquor was found in the accused's blacksmith shop. The officers went from the shop to a chicken coop kept by the accused, but which was located a block and a half away from the shop.

They found more liquor. The indictment charged one possession offense. The court, in upholding the conviction, stated the following:

Possession may be quite transitory and variable in place. The two properties, the blacksmith shop and the chicken coop, were but a short distance apart, both owned and operated by the defendant and in his possession. Hence the bottles found therein were in his possession. That one parcel of liquor might be found on defendant's person, or on one shelf, or in one room or building, and another parcel in another place, it all being in defendant's possession, does not make the possession of one a distinct and separate offense from that of the possession of the other.

216 N.W. at 711.

In *Renfro v. State*, 176 Tenn. 638, 144 S.W.2d 793 (1940) the defendant was convicted on a charge alleging the illegal possession of thirteen and one-half cases of liquor on August 12, 1939. The evidence showed that the defendant had sold a pint of liquor to a witness who led the police to the accused. The police, by an illegal search, found thirteen and one-half cases of liquor on the accused's property. The trial court submitted the case to the jury only upon the proof of the pint sold to the witness which, on appeal, the defendant claimed was not covered by the charge. In upholding the conviction, the court stated:

He was possessed of this whisky [sic] on that same day and on the same premises as he was possessed of the thirteen and one-half cases of whisky. It was all one possession. The defendant could not have been prosecuted for the possession of the pint of whisky and separately prosecuted for the possession of the thirteen and one-half cases of whisky.

144 S.W. at 794.

Therefore, in this case, the evidence of simultaneous possession indicates that the defendant was confronted with only one offense. *See, e.g., United States v. Peterson*, 768 F.2d 64 (2d Cir.1985) (defendant's conviction on one count of heroin possession justified by both heroin found in court-yard wall and heroin found on the defendant's brother). It should be noted, though, that the evidence of cocaine sales to the informant on the 21st and 22nd of February could, likewise, sustain a conviction for possession with intent to sell cocaine. *See State v. Williams*, 623 S.W.2d 121, 125 (Tenn.Crim.App.1981) (impossible to sell drugs without having, at least, constructive possession of them). If the February 21st sale is treated as a separate offense, the defendant's request for an election would conform to *Brown*. Under *Renfro v. State, supra*, an argument could be made, though, that the possession reflected by these sales constituted the same offense reflected by the possession of cocaine found on the premises.

Obviously, if all of the cocaine evidence in this case related to only one offense of possession, the requirement of election called for by *Brown* is inappropriate. However, the fact that the election remedy does not apply does not mean that the defendant is not entitled to the protections upon which *Brown* is based. A fundamental constitutional right which *Brown* sought to protect, and which is at issue in this case, is the defendant's right to the unanimous verdict by the jury relative to what constitutes the offense. *See State v. James Edward Simpson*, No. 4, Dyer Co., 1989 WL 1121 (Tenn.Crim.App., Jackson, Jan. 11, 1989) (noting the core concern of the election rule is to guarantee that the jury verdict not be one of some jurors convicting on one offense and others on another).

The indictment in this case was neither time nor place specific. It only alleged that the felonious possession of cocaine occurred on "the ___ day of February A.D. 1989." Therefore, a determination of guilt could have been based upon any or all of the evidence of cocaine (1) at 219 Harris Street, (2) at the garage, (3) possessed and sold to the informant on February 21 and (4) possessed and sold to the informant on February 22. We have no way of knowing by the jury's verdict of guilty whether or not the jurors unanimously agreed on, at least, one of the acts of possession proven

by the state's evidence as existing beyond a reasonable doubt.

In criminal cases which expose defendants to confinement or a fine of more than fifty dollars, article 1, section 6 of the Constitution of Tennessee has been interpreted as giving the defendant the right to a trial by a jury of twelve people. *See State v. Dusina,* 764 S.W.2d 766, 768 (Tenn.1989); *Grooms v. State,* 221 Tenn. 243, 426 S.W.2d 176 (1968) (neither eleven nor thirteen person juries will suffice); *Willard v. State,* 174 Tenn. 642, 130 S.W.2d 99, 100 (1939). The constitutional right to a jury trial necessarily entails the right of a defendant "to have every issue made by the evidence tried and determined by the jury under a correct and complete charge of the law given by the Judge." *Strader v. State,* 210 Tenn. 669, 362 S.W.2d 224, 230 (1962); *see State v. Staggs,* 554 S.W.2d 620, 626 (Tenn.1977). What *Brown* points out, in this regard, is that the constitutional right to a jury necessarily entails a right that the jury be unanimous as to which offense constitutes the crime for which the defendant is convicted. A necessary corollary issue is presented by this case, that is, is a criminal defendant entitled to jury unanimity regarding the specific act or acts which constitute the offense?

In *United States v. Gipson,* 553 F.2d 453 (5th Cir.1977), the defendant was convicted of the sale or receipt of a stolen vehicle transported in interstate commerce. The indictment and the proof presented several acts which could, if *found beyond a reason*able doubt, each justify a conviction for the offense under the statute involved. In response to a jury question, the trial court instructed the jury as follows:

> For example, would it be possible for one juror to believe that the Defendant had stored property, and another juror to believe that he had received property, and so on. If all twelve agreed that he had done some one of those acts, but there was not agreement that he had the same act, would that support a conviction? The answer is yes.

*Id.* at 456. On appeal, the conviction was reversed because of the constitutionally based right of a federal criminal defendant to a unanimous jury verdict. The court reasoned that the unanimity rule "requires jurors to be in substantial agreement as to just what a defendant did as a step preliminary to determining whether the defendant is guilty of the crime charged." *Id.* at 457–458. It noted that, under the instruction, the jury was allowed to convict even though there may have been significant disagreement among the jurors as to what the defendant did. Therefore, the instruction violated the defendant's right to a unanimous jury verdict. Further, since the government's proof presented evidence of multiple acts which separately tended to show a violation, the court noted that the instruction was not harmless beyond a reasonable doubt.

In *United States v. Beros,* 833 F.2d 455 (3rd Cir.1987), two of the counts upon which the defendant was convicted alleged embezzling, stealing or converting union funds. The government presented proof of various acts which, separately, could provide a basis for conviction under the counts. The defendant requested the trial court to instruct the jury that, to convict, it must unanimously agree upon a particular theory of criminality and unanimously agree upon the specific transaction that it found to support the theory of guilt. The trial court instructed the jury as to the theory issue, but it refused to instruct regarding the need for unanimity as to the particular act. The Third Circuit reversed the convictions. It held that the sixth amendment requirement of jury unanimity encompasses the requirement of "unanimity regarding the specific act or acts which constitutes [sic] that offense. Absent such certainty, the unanimity requirement would provide too little protection in too many instances." *Id.* at 461.

Further, the court followed the Ninth Circuit rule[1] in holding that if there is a genuine possibility or potential (1) of jury confusion because of case complexity or (2) that a conviction may occur as a result of

1. Established in *United States v. Echeverry,* 698 F.2d 375 *modified* 719 F.2d 974 (9th Cir.1983).

different jurors concluding that the defendant committed different acts, the trial court must augment the general instruction as to unanimity to insure that the jury understands its duty to agree unanimously to a particular set of facts. It provided the following admonishment to the government:

It cannot rely on a composite theory of guilt, producing twelve jurors who unanimously thought the defendant was guilty but who were not unanimous in their assessment of which act supported the verdict. Conviction by a jury that was not unanimous as to the defendant's specific illegal action is no more justifiable than is a conviction by a jury that is not unanimous on the specific count. In this case, the permutations that can support a valid conviction are varied and several. What may not vary, however, is the required unanimity of each aspect of the jury's finding. We are convinced that the sixth amendment requires such unanimity, and we must be certain that the jury was properly instructed to achieve it.

*Id.* at 462. The Sixth Circuit has approved the reasoning of *Beros* and has recognized the problem as a "danger of a composite or 'patchwork' verdict in violation of the Sixth Amendment principal that a jury verdict be unanimous." *United States v. Duncan,* 850 F.2d 1104, 1110 (6th Cir.1988) (when evidence of two false statements is used to prove one false tax return offense, the jury should be instructed of the need for unanimity on, at least, one of the statements in order to convict).

In *United States v. Peterson,* 768 F.2d 64 (2nd Cir.1985) the court was confronted with the issue relative to a single conviction for heroin possession under facts which reflected heroin was found in a hole in a wall next to the defendant while more heroin, which the government attributed to the defendant, was found on the defendant's brother. The court referred to *Gipson* in noting that the two instances of possession constituted "distinct conceptual groupings," each of which would constitute a crime under the same count of the indictment. It noted that such a circumstance would require jury unanimity as to the particular act or acts in order to convict.

The requirement of unanimity imposed upon the federal courts under the Federal Constitution has not been imposed upon the states through the fourteenth amendment. *See Apodaca v. Oregon,* 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972). However, as previously noted, there should be no question that the unanimity of twelve jurors is required in criminal cases under our state constitution. In this regard, although not bound by the federal court cases on this issue, the reasoning which they use is persuasive and is in line with that used in *Brown* and the cases upon which *Brown* is based. *See Burlison v. State, supra; Vinson v. State,* 140 Tenn. 70, 203 S.W. 338 (1918); *Jamison v. State,* 117 Tenn. 58, 94 S.W. 675 (1906).

Therefore, we hold that in cases involving evidence which shows a real potential that a conviction may occur as a result of different jurors concluding that the defendant committed different acts, each of which separately showing the commission of an offense, the trial court must augment the general unanimity instruction to insure that the jury understands its duty to agree unanimously to a particular set of facts. The assessment of this potential would involve consideration of the allegations made and the statutory offense charged, as well as the actual evidence presented.

■ Such an assessment is needed because not every fact, circumstance or theory of guilt will call for an instruction greater than the general one. For instance, if there were one act of possession, the unanimity rule would not require instruction relative to whether the possession was with the intent to sell or with the intent to distribute. *See United States v. McGuire,* 744 F.2d 1197, 1202–03 (6th Cir.1984) (the act to defraud was the same whether the theory was as to the debtor being the victim or was as to the creditor being the victim). It is only when the evidence can be placed in "distinct conceptual groupings," of which each would constitute a crime under the same count, does the con-

cern for unanimity arise. *See United States v. Gipson, supra,* 553 F.2d at 458.

The state relies upon *State v. Anderson,* 748 S.W.2d 201 (Tenn.Crim.App.1985) which upheld a conviction for aggravated rape where the proof showed various acts of various types of penetration occurring on different days. The trial court required the state to elect as to the type of penetration upon which it was relying, but not as to the specific date of the offense. The defendant relied upon *Burlison v. State, supra,* which mentions the same three protections that formed the basis of the *Brown* decision, and asserted that the state should have had to elect as to the date. This Court noted that there was no showing that the defense was hampered and that since double jeopardy protection would apply, under *State v. Hardin,* 691 S.W.2d 578 (Tenn.Crim.App.1985), as to any offense which would have met the time frame of the indictment, there was no jeopardy problem. Further, it held that since the evidence was sufficient to support a conviction on all the offenses shown in the proof, "the defendant has not been convicted of an offense on insufficient evidence, and he is not thus denied the constitutional protection requiring his guilt must be shown beyond a reasonable doubt." *Id.* at 203.

*Anderson* does not resolve the issue in this case. First, it did not address the issue in the context of a constitutional right to trial by a jury and it did not decide the effect of the unanimity requirement on such right. In fact, the case does not disclose whether the trial court instructed the jury properly on unanimity of its verdict. Since the state was required to elect as to the type of penetration, the jury in *Anderson* may have been given an appropriate indication of the need for offense unanimity.

Second, *Brown,* decided after *Anderson,* reversed a conviction even though the record reflected that the evidence was sufficient to uphold a conviction in that case. In fact, this Court has commented that *Brown* may have overruled *Anderson, sub*

*silentio. State v. James Edward Simpson, supra,* slip op. at 4.

Third, reviewing the issue of jury unanimity under the constraints imposed upon appellate courts relative to the sufficiency of the evidence, i.e., presumption of guilt, presumption jury resolved issues in favor of state, etc., begs the question. It presumes the precise point under attack. The fact that the evidence *may* have been sufficient to convict does not tell us, under a general verdict of guilt, whether or not the jury was unanimous as to *what* evidence justified conviction in a case involving proof of multiple offenses or multiple events. A presumption of unanimity may be made if the case involves one event-one crime evidence, but such a presumption is unwarranted if the evidence shows several events with each, if true, constituting the offense charged under circumstances reflecting a real potential for a composite jury verdict.

Finally, *Anderson* had a specific factual basis which could make it consistent with the rule announced in this case. In a case where the evidence shows that the defense is, simply, a denial that any offense occurred and that the evidence in favor of the state's position is of a similar quality as to each offense proven and is derived from the same witness(es), then it is extremely difficult to imagine that a potential exists of the jury splitting its findings. Such a clear cut case would not seem to call for an augmented unanimity instruction, since the accrediting of the witnesses as to one offense would necessarily accredit them as to the others. *Anderson* appears to be such a case.

In the present case, although the defendant made a blanket denial of wrong doing, there was evidence (1) that Mr. Bond and Ms. Chapman had ready access to the 219 Harris residence and possessed cocaine there and (2) that other persons used or had easy access to the garage owned by Mr. Mays. Also, the quality of, and the source of, the evidence regarding the two cocaine sales was different. In fact, Sgt. Caldwell never said that he "heard" the defendant transact the second sale. This

record reflects a real potential for the jury to convict the defendant of possession of cocaine without any unanimity as to which act or acts constituted the offense.

Further, the trial court instructed the jury as to the offense consisting of the elements of (1) possession, either actual or constructive, of cocaine and (2) intent to sell or deliver it. It told the jury that if it were satisfied "beyond a reasonable doubt that the Defendant did commit the offense of possession of cocaine" with appropriate intent, it would report that fact in its verdict. Finally, the trial court instructed the jury that the "verdict must be unanimous" and that to return a verdict, "it is necessary that each juror agree thereto." These instructions are not adequate to convey to the jurors the need for their unanimous agreement as to the defendant committing, at least, one particular act of possession which constituted the offense before they could convict.

In *Burlison v. State, supra,* our Supreme Court imposed upon the trial court a two-fold duty, i.e., require the state to elect *and* "properly instruct the jury so that the verdict of every juror would be united on the one offense." 501 S.W.2d at 804. Although the court noted that the defendant filed a pretrial motion to quash which should have put the trial court on notice of the problem, the implication in *Burlison* is that the unanimity requirement is a fundamental right and not contingent upon a request being made. In this regard, *Burlison* provides a greater protection than is found in several federal circuits, which indicate that the failure to instruct may not be plain error in cases where it was not raised by the defendant in some fashion and the trial court gave the general unanimous verdict instruction. *See United States v. Duncan, supra,* 850 F.2d at 1110; *United States v. Beros, supra,* 833 F.2d at 462; *United States v. Peterson, supra,* 768 F.2d at 68; *United States v. Mangieri,* 694 F.2d 1270, 1281 (D.C.Cir.1982).

In any event, the defendant in this case, by his request for election and his statement to the court regarding his concern that the evidence related to separate offenses fairly raised the issue. As in *Burlison,* the trial court was put on notice by the defendant of a real potential for a verdict not based upon jury unanimity. Further, the colloquy between the trial court and defense counsel shows that the trial court was not going to expand its instructions regarding the various locations of the cocaine. Therefore, we hold that the defendant properly preserved the issue and the trial court committed reversible error by failing to instruct the jury adequately as to the requirement for unanimity.

Next, the defendant contends that the trial court erred by allowing the state to present evidence of other offenses. Essentially, he points to three matters: (1) the evidence of cocaine at the various locations and the sales, (2) the explanation of the use of informants and why those individuals become informants and (3) Sgt. Caldwell's statements that he had known the defendant since Caldwell had been investigating narcotics and that he had previously talked to the defendant at the police station.

The cocaine, its sale, and the defendant's relation thereto have already been dealt with in this opinion. As previously stated, it is quite difficult to refer to the various possessions as separate offenses when they may be the crime, itself. In any event, these closely connected events were highly relevant to show the defendant's intent and the existence of a continuing plan to possess cocaine for sale. *See State v. Parton,* 694 S.W.2d 299 (Tenn.1985); *Bunch v. State,* 605 S.W.2d 227 (Tenn. 1980). Further, it tended directly to prove the defendant's guilt of the offense with which he was charged. *See Harris v. State,* 189 Tenn. 635, 227 S.W.2d 8 (1950).

As to the use of the informant, the state, over objection, elicited from Sgt. Caldwell the following:

What we do is we have informants of various natures, some wanting just money for it, revenge, because they've usually got ripped off on the dope or they didn't get what they paid for as far as

the quantity or what it actually was, and they come to us, or—

and

We take these informants and they give us information.

and

What we have is people that come to us and give us information. We call them informants. They give it to us for various reasons. We work in several different ways. Either they buy dope and. . . .

At this point, the trial court told the state not to go into that and to get to what was done in this case.

This evidence, admitted in the state's case-in-chief, was wholly irrelevant to the issues on trial. It allowed the jury to infer that the informant used in this case had an ax to grind with the defendant because of previous drug deals. It carries obvious prejudice to the defendant, *see Gray v. State*, 191 Tenn. 526, 235 S.W.2d 20 (1950), and it is doubtful that the trial court's comment to the state to move on, after it had overruled the defendant's objection at the time of the most damaging statement, obviated the prejudice. Such testimony should not be allowed in the state's case-in-chief in the retrial of this case.

■ The references to Sgt. Caldwell's prior knowledge and contact with the defendant occurred in exchanges with defense counsel during cross-examination. We note that the pre-sentence report reflects that the defendant had previously been charged and acquitted of the sale and delivery of cocaine. Obviously, he had prior contact with the police regarding a drug investigation. Defense counsel, through cross-examination of the various investigating officers, sought to elicit the fact that the defendant had no previous *conviction* for drugs. However, the questioning as to previous knowledge of the defendant was framed in such a way that the officers "gave as good as they got." Any indication that the jury received as to how Sgt. Caldwell knew the defendant and where he had previously dealt with him resulted from reasonably responsive answers by him to defense questioning. Any prejudice to the defendant accruing from this ex-

change was invited by the defendant and he cannot seek relief for it now. T.R.A.P. 36(a).

■ Next, the defendant claims that he was entitled to disclosure of the identity of the informant used in this case. He requested disclosure during Sgt. Caldwell's testimony, asserting that the informant was a participant in the sale and that he was entitled to have her subpoenaed. The trial court denied the request. The state contends that disclosure was not proper because the informant was not present at the time of the search and there was no assertion that she was involved in the possession or sale of the cocaine at issue.

Generally, the state is entitled to withhold from disclosure the identity of persons who furnish information of violations of law to law enforcement officials. This privilege is based upon public policy in that it furthers and protects the public interest in effective law enforcement. Our courts and the federal courts recognize that the privilege encourages citizens to assist in crime detection and prevention, while preserving anonymity in order to protect them from peril and to continue their usefulness in the future. *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 627, 1 L.Ed.2d 639 (1957); *Roberts v. State*, 489 S.W.2d 263, 264 (Tenn.Crim.App.1972).

However, as noted in *Roviaro*, the privilege is a qualified one and its scope is limited by its underlying purpose. *Id.*, 77 S.Ct. at 627. Likewise, it is limited by the fundamental requirements of fairness in criminal proceedings. In *Roviaro*, the Supreme Court stated the following:

The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses, the possible significance of the informer's testimony, and other relevant factors.

77 S.Ct. at 628–629.

In Tennessee, the decision to disclose an informant's identity has been left to the

sound discretion of the trial court. *See Simmons v. State*, 198 Tenn. 587, 281 S.W.2d 487 (1955). However, that discretion is limited by the scope of the privilege and the very concerns of fundamental fairness expressed in *Roviaro*. In this regard, cases have noted various circumstances which would render a refusal by the trial court to order disclosure an abuse of discretion.

The privilege must fall when disclosure of the informant's identity "is relevant and helpful to the defense of an accused, or is essential to a fair determination of a cause...." *Roviaro v. United States, supra*, 77 S.Ct. at 628. In *DiBlasio v. Keane*, 932 F.2d 1038 (2d Cir.1991), a habeas corpus case, the Second Circuit held that disclosure of the informant was material to the defendant in a drug sale case because of the defendant's evidence of entrapment by the informant, even though the informant was not a material witness to the offenses which were on trial. Thus, contrary to the position implied in the state's argument, in this case, the fact that the informant may not have been present at the time of the search does not necessarily keep the privilege intact.

In *Roberts v. State, supra*, a conviction for marijuana sale was based upon the testimony of an undercover officer who said he was taken to the defendant's home by an informant, who witnessed the sale. The defense presented evidence that the sale did not occur. Upon cross-examination, the officer refused to disclose the identity of the informant. This court reversed the conviction solely because of the failure to disclose the informant, even though there was no indication as to what the informant would say if he were called as a witness. The essence of *Roberts* is that the state may not withhold from the defense the identity of a material witness to a legitimately contested issue in the case, even if that witness is a confidential informant.

The state cites *State v. Ash*, 729 S.W.2d 275 (Tenn.Crim.App.1986) and *Carver v. State*, 570 S.W.2d 872 (Tenn.Crim.App. 1978) in asserting that the trial court had the discretion not to require disclosure of the informant in this case. In *Ash*, a drug case, this Court affirmed the refusal to disclose noting that the defendant did not contend that the informant "was a material witness to the facts surrounding the actual search of the defendant's premises." 729 S.W.2d at 278. In *Carver*, a drug case, this Court affirmed the refusal to disclose noting that the case was not "a situation in which the informer is a person with whom the accused is charged to have been dealing, such as an indictment alleging a sale to anonymous with anonymous being the informer." 570 S.W.2d at 874.

In this case, the proof of sales to the informant by the defendant was highly relevant to the state's case. Although the sales occurred before the search, the identity of the defendant being the seller was of fundamental importance for connecting the defendant to the cocaine and showing his felonious intent. In effect, the state was allowed to show sales "to anonymous with anonymous being the informer." The defendant denied making the sales and denied being present in Mr. Mays' house at the time of the alleged sale. The state relied upon Sgt. Caldwell's testimony that he "heard" a sale by the defendant and there is no evidence that a tape-recording was made of either sale. Under these circumstances, when the state sought to prove the sale to the informant, who was the *only* agent of the state participating in the transactions, it was not entitled to keep her identity privileged.

In *Roberts v. State, supra*, the informant was a material witness to the offense for which the accused was being prosecuted. This Court noted that when "the State introduces proof that there was a witness to the crime that might be in a position to assist the defense in countering the accusation but refuses to disclose his identity, then the defendant is effectively deprived of the important right to have his witnesses." 489 S.W.2d at 266. Under such circumstances the disclosure of the informant's identity may be presumed to be relevant and helpful to the defense or, at least, essential to a fair determination of

the cause. *See Roviaro v. United States, supra,* 77 S.Ct. at 623.

In this case, the fact that the defendant, unlike in *Roberts,* was not charged with the sale to the informant does not present a substantive distinction from *Roberts.* When the state chooses to present evidence of criminal activity by the defendant which is relevant to the issues on trial, it thereby makes the informant who participated in the criminal activity a material witness whose identity is subject to disclosure. Under the circumstances of this case, the trial court abused its discretion in denying disclosure.

◼ Next, the defendant contends that plain error occurred by virtue of remarks by the trial court in verbal exchanges with defense counsel. The remarks occurred mainly in the context of the trial court making evidentiary rulings. The defendant points, as well, to the trial court's detailed examination of Sgt. Caldwell regarding what he heard of the February 21 transaction between the defendant and the informant, which it followed with the comment, "I wanted to be sure Mr. Ragan understood what he was saying."

The trial court "must be very careful not to give the jury any impression as to his feelings or to make any statement which might reflect upon the weight or credibility of evidence or which might sway the jury." *State v. Suttles,* 767 S.W.2d 403, 407 (Tenn. 1989). Such care should, also, be given relative to his feelings about counsel for the parties and their actions. Although the record reflects that the trial court could have used more circumspect language in dealing with defense counsel, the issue is not the propriety of the judicial conduct of the trial court, but whether it committed an error which resulted in an unjust disposition of the case. *State v. Baker,* 785

S.W.2d 132, 135 (Tenn.Crim.App.1989). The trial court's actions in this case did not deprive the defendant of a fair trial.

Finally, the defendant asserts the trial court erred by denying him probation or a sentence pursuant to the Community Corrections Act of 1985. *See* T.C.A. § 40–36–106. Since the sentence was imposed after November 1, 1989, it was controlled by the Criminal Sentencing Reform Act of 1989. T.C.A. § 40–35–117(b). First, we note that the judgment incorrectly reflects the conviction is for a Class B felony. Felonies involving the quantity of cocaine in this case which occur before the effective date of the 1989 Sentencing Act are treated as Class C felonies. *See* T.C.A. § 40–35–118.

Appellate review of the manner of service of a sentence is *de novo* upon the record with a presumption that the trial court's determinations are correct. T.C.A. § 40–35–401(d). We have reviewed the record under all factors, principles and purposes provided by the 1989 Sentencing Act and the Community Corrections Act. *See* T.C.A. §§ 40–35–102, –103 and –210; *State v. Taylor,* 744 S.W.2d 919, 920 (Tenn.Crim. App.1987). In this regard, we find that the defendant has not overcome the presumption that the sentence to confinement in the workhouse is correct.

In consideration of the record as a whole, the conviction is reversed and the case is remanded to the trial court for a new trial.

JONES and PEAY, JJ., concur.