IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs March 30, 2010

## STATE OF TENNESSEE v. TIMOTHY DELL HILTON

**Direct Appeal from the Criminal Court for Cumberland County**
**No. 9921    David A. Patterson, Judge**

---

**No. E2009-01434-CCA-R3-CD - Filed June 10, 2010**

---

The Defendant-Appellant, Timothy Dell Hilton, was convicted by a Cumberland County jury of aggravated kidnapping, a Class B felony, and aggravated assault, a Class C felony. He received an eight-year sentence for the aggravated kidnapping conviction, and a concurrent, three-year sentence for aggravated assault conviction. On appeal, Hilton claims: (1) the insufficiency of the evidence; and (2) the trial court erred in denying his motion in limine. Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and D. KELLY THOMAS, JR., JJ., joined.

David N. Brady, District Public Defender; Cynthia Lyons, Assistant Public Defender, Cookeville, Tennessee, for the Defendant-Appellant, Timothy Dell Hilton.

Robert E. Cooper, Jr., Attorney General and Reporter; Sophia S. Lee, Assistant Attorney General; Randall A. York, District Attorney General and Gary McKenzie, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

**Facts**. The victim, Lynn Mae Hilton, testified that she was married to the Defendant for nineteen years. In 2007, they were in the process of getting a divorce. The victim wanted to divorce Hilton because he was extremely overbearing. The victim testified that in May of 2007, Hilton threatened to kill himself if she divorced him. She said that on July 20, 2007, Hilton attempted to commit suicide by drinking two bottles of weed killer and cutting his wrist. Hilton was taken to the hospital and admitted for psychiatric treatment in Lebanon, Tennessee. After the suicide attempt, the victim told Hilton that he could no longer live at

their home. For safety reasons, she changed the locks on the doors. While at home, the victim felt she was being watched in the evenings. She spoke with Hilton over the phone two or three times, and she tried to negotiate a separation agreement.

The victim then described what transpired during the early morning hours of September 2, 2007, the date of the offenses. She was inside her home when she decided to go into the garage. The victim stated:

> When I opened the garage door, Timothy Hilton was there. He pushed his way through. He grabbed me around the neck, forced me to the ground, put his knees on my shoulders, took a knife, pocket knife out of his back pocket and started playing with it and opening and closing it. And I asked him what that was for. He said it was for his enjoyment, his pleasure, he would either cut himself or cut me or both of us, he did not know.

> At that point I started struggling, I was in fear for my life. He told me to keep on fighting, I could scream, I could do whatever I wanted to do, that nobody would hear me. I realized that he was too big and too heavy to fight, I couldn't do anything, so I stopped. And at that point in time he took some plastic stay strips and he bound my hands together and he bound my ankles together.

> . . . .

> And he pulled them tight and one was extremely tight. And then he picked me up and he dragged me through the kitchen to the computer room and he put me in the computer chair. He rolled me back into the kitchen and he went into the garage and he got this duffle bag and brought it in and some other things that he had in the garage. Then he rolled me back by the refrigerator and put his bag up on the counter and he started taking things out of it, knives and rope and a tarp and a calender and food, and he said see, I have toilet paper, I was planning to wait in there as long as I could, this is all your fault.

> . . . .

> He then said this was all my fault, that he needed to talk to me and this was the only way he could get to talk to me. And that since it was the holiday weekend, no one was expecting him until Tuesday and that no one was expecting me, so no one would miss me. He said he hadn't made up his mind

yet whether he was going to kill himself or he was going to kill me and then himself, but either one or both of us was not going to make it out of that house alive Tuesday morning. He said that to me twice and depending on what I did and what I said on whether I would stay alive or not.

He said don't even think about calling the cops because when I was in Lebanon I learned that I can cut you here on this artery or that I can cut the femoral artery on your leg and you'll bleed to death in a matter of seconds and it will make a nice mess on this floor.

The victim said Hilton wanted to examine her email. Using a box cutter, he freed the victim's hands so that she could operate the computer. Her ankles were still bound. Hilton threatened to cut the victim if she tried to do anything. He tied her to the computer chair by wrapping a rope around her waist. Hilton reviewed the emails, and then started to blame her for pursuing a divorce. The victim decided that her best chance for survival was to appease Hilton. She apologized to him and said he was right about what had happened. Hilton became "very happy," and he untied her. He allowed her to tend to her puppies, but told her not to "try anything." Hilton allowed the victim to cook breakfast and make some coffee. They sat together in the living room, and Hilton explained that they were going to live together. When he went to use the bathroom, the victim grabbed her cell phone and ran outside. She went to a neighbor's house, and the neighbor contacted the police. The victim testified that during the altercation with Hilton, she was convinced that he would kill her. On cross-examination, the victim denied testifying at the preliminary hearing that Hilton never opened the knife.

Deputy Donnie McDonough of the Cumberland County Sheriff's Department testified that he arrived at the Hilton's home at around 8:00 a.m. Upon approach, he saw a man pointing towards the woods. Deputy McDonough was told that Hilton had run that direction with a large knife. Deputy McDonough ran about a mile into the woods before finding Hilton. Deputy McDonough noticed that Hilton was holding a knife. He described Hilton's posture as "aggressive." Deputy McDonough took cover behind a tree, drew his gun, and demanded that Hilton drop the knife. He said Hilton "asked me to shoot him." Hilton eventually dropped his knife and was taken into custody. Deputy McDonough stated that a duffel bag was found at the victim's home, and it contained a rope, shoes, clothes, and food.

Deputy McDonough provided a description of the victim at the scene of the altercation. He stated:

She was shaking, her face was read [sic]. I also noticed where . . . she had been bound with the zip ties. She had red marks about her wrists and her

ankles. And some marks on her shoulder area consistent with the statements of having someone physically put hands on her.

Deputy McDonough said he did not find a box cutter during his investigation.

Investigator Casey Cox of the Cumberland County Sheriff's Department testified that Hilton was already in custody when he arrived at the Hilton's home. At trial, Investigator Cox was shown photographs of the victim that he had taken at the scene of the altercation. He noticed discoloration on the victim's shoulder, which he described as "like a bruising." Investigator Cox stated that another photograph showed red markings on the victim's wrists that were consistent with her being tied down by zip ties.

Hilton testified that he was sixty-one years old. He said his wife's behavior began to "radically" change after she began taking medication for her fibromyalgia. Hilton said initially he was not going to contest the divorce; however, this changed when the victim refused to communicate with him. He tried to kill himself in July, and he stayed at a hospital for ten days where he received medication.

Hilton testified that on the date of the altercation, he was suicidal. He waited in the victim's garage for her to open the door. Hilton denied employing force to get inside, but he admitted using zip ties to restrain the victim. He also admitted to possessing two knives and a duffle bag. Hilton said he entered the home, grabbed the victim's wrists, and placed her on the floor. He denied kneeling on her chest. He attached zip ties to her feet and wrists to prevent her from fighting back. The victim complained that the zip ties were too tight, so Hilton pulled out his knife to cut the material. He said the victim "freaked out" upon seeing the knife. Hilton put the knife away and used scissors to cut the zip ties. He denied threatening her with a knife. He then tied the victim to a chair by wrapping a rope around her waist. Hilton said he went to the victim's home to finish the divorce proceedings. He denied threatening to harm the victim or threatening to commit suicide.

On cross-examination, Hilton said he originally entered the victim's garage at 3:00 a.m. Hilton brought a duffle bag with supplies, such as food, because he was unsure when the victim would open the garage door. After restraining the victim, Hilton admitted that she was not free to leave and that she was effectively a prisoner in the home. Hilton said he was at the victim's home from 3:00 to 8:00 a.m. He said the victim was restrained by zip ties for twenty minutes.

**Motion In Limine**. Prior to trial, Hilton filed a motion in limine that was limited to the charge of aggravated kidnapping. The motion sought to prevent the State from introducing evidence of the victim's bodily injuries. The motion did not, however, set forth

the basis for excluding the evidence. The trial court addressed the motion after voir dire. The indictment charged that Hilton committed aggravated kidnapping by possessing a deadly weapon. Hilton explained that this offense can also be committed by proving that the victim suffered bodily injury. Therefore, if evidence of the victim's injuries was presented at trial, Hilton argued that it would be unclear whether the jury found Hilton guilty of the offense as charged in the indictment. The State said it intended to introduce photographs that showed injuries to the victim's wrists and shoulder. The State explained that this evidence would be offered for the sole purpose of proving that Hilton confined the victim.

The trial court examined the photographs before denying the motion. It found that evidence of the victim's injuries was probative of whether Hilton held the victim against her will. The court further stated:

> But the court is of the opinion that this evidence . . . completes an understanding for a jury to have regarding the kidnapping and it will not cause the jury to possibly have a split decision or some . . . decision that is other than what the court is going to charge them. The court has a charge, that charge is that if they find that the victim was kidnapped and . . . the defendant used a deadly weapon, that being a knife, and that he acted intentionally or knowingly, that they are to find him guilty of that offense. And I believe that the evidence that the state seeks to prove is probative of that and I'm going to allow the state to use that evidence being testified to and also the photographs that have been seen by the defendant and the defendant's attorney and have just been viewed by the court[.]

Following the proof at trial, Hilton was convicted of aggravated assault and aggravated kidnapping. After a sentencing hearing, Hilton received an effective sentence of eight years in the Tennessee Department of Correction. He filed a motion for new trial that was denied after a hearing. Hilton filed a timely notice of appeal.

**ANALYSIS**

**I. Sufficiency of the Evidence**. Hilton claims the evidence presented at trial was insufficient to support his convictions. The argument in his brief is limited to the following paragraph:

> The defendant contends that the evidence adduced at trial was insufficient to sustain the jury's verdict. The defendant contends this is particularly so with respect to the use of a deadly weapon, as he explained in his testimony that he only retrieved a knife from his pocket once, to cut the ties off of Mrs. Hilton,

but when she did not like that idea he put the knife away and used scissors instead.

The State argues that a reasonable jury could have found Hilton guilty of both charges, and that Hilton is improperly requesting this court to override the jury's determination of witness credibility.

Hilton was convicted of aggravated assault under Tennessee Code Annotated section 39-13-102. The following sections are applicable to the charge in the indictment:

(a) A person commits aggravated assault who:

(1) Intentionally or knowingly commits an assault as defined in § 39-13-101 and:

(B) Uses or displays a deadly weapon[.]

T.C.A. § 39-13-102 (2007).

(a) A person commits assault who:

(2) Intentionally or knowingly causes another to reasonably fear imminent bodily injury[.]

T.C.A. § 39-13-101 (2007).

Hilton was also convicted of aggravated kidnapping under section 39-13-304. The statute, as pertinent to the charge in the indictment, reads:

(a) Aggravated kidnapping is false imprisonment, as defined in § 39-13-302, committed:

(5) While the defendant is in possession of a deadly weapon or threatens the use of a deadly weapon.

In defining false imprisonment, section 39-13-302 states:

(a) A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty.

-6-

When the defendant challenges the sufficiency of the evidence, we must consider "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see also Tenn. R. App. P. 13(e) (2006) ("Findings of guilt in criminal actions whether by the trial court or jury shall be set aside if the evidence is insufficient to support the finding by the trier of fact of guilt beyond a reasonable doubt."). This standard applies to convictions based upon direct, circumstantial, or a combination of both direct and circumstantial evidence. State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999) (citation omitted). The State, on appeal, is entitled to the strongest legitimate view of the evidence and all legitimate or reasonable inferences which may be drawn from that evidence. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

All questions involving the credibility of witnesses, the weight and value to be given the evidence, and all factual issues are resolved by the trier of fact, and this court will not reweigh or reevaluate the evidence. State v. Sutton, 166 S.W.3d 686, 689-90 (Tenn. 2005). This court has often stated that "[a] guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the prosecution's theory." Bland, 958 S.W.2d at 659 (citation omitted). A guilty verdict also "removes the presumption of innocence and replaces it with a presumption of guilt, and the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id. (citation omitted).

In this case, a rational jury could have found Hilton guilty of aggravated assault. The victim testified that Hilton forcefully entered her home on the night in question. Hilton conceded that he tied up the victim's wrists and feet with zip ties, and later tied the victim to a chair with rope. Hilton admitted that he felt suicidal that night and that he tried to kill himself a few months before. The victim was aware of Hilton's past suicide attempt. Hilton acknowledged that he displayed a knife in the victim's presence while she was imprisoned. The victim testified that Hilton threatened to kill her multiple times, and she was convinced that she was going to die. Based on the foregoing evidence, the requirements of section 39-13-102 were clearly met. Hilton's argument regarding his use of the knife fails to consider the plain language of the statute, which requires only that the defendant "[u]ses or displays a deadly weapon." T.C.A. § 39-13-102(a)(1)(B)(emphasis added). Even if the victim's testimony is disregarded, Hilton acknowledged that he displayed a deadly weapon at trial.

A rational jury could also have found Hilton guilty of aggravated kidnapping. Hilton admitted that after restraining the victim with zip ties and rope, she was not free to leave and she was effectively being held prisoner. This evidence alone is sufficient to establish that

Hilton falsely imprisoned the victim. Hilton's argument regarding his use of the knife again ignores the plain language of the applicable statute. Section 39-13-304(a)(5) only requires that the victim possess a deadly weapon during the kidnapping. Hilton admitted that he possessed at least one knife while the victim was restrained against her will.

The evidence was sufficient to support both of the convictions. Accordingly, Hilton is not entitled to relief on either claim.

**II. Motion in Limine**. Hilton claims the trial court erred in denying his motion in limine. The motion pertained only to the charge of aggravated kidnapping.[1] It sought to exclude evidence of the bodily injuries suffered by the victim during the kidnapping. In essence, because Hilton was charged with sections of the aggravated kidnapping and aggravated assault statutes concerning a weapon and not bodily injury, he claims that the State's proof of the victim's bodily injury was unfairly prejudicial. As a result of the trial court's erroneous admission of this evidence, and based on State v. Brown, 823 S.W.2d 576 (Tenn. Crim. App. 1991), Hilton contends he was denied a unanimous verdict. The State argues that the trial court did not abuse its discretion in denying the motion because the victim's injuries were relevant to the element of confinement. Upon review, we agree with the State.

The Tennessee Supreme Court has generally held that some "questions concerning the admissibility of evidence rest within the sound discretion of the trial court, and this [c]ourt will not interfere in the absence of abuse appearing on the face of the record." State v. Pylant, 263 S.W.3d 854, 870 (Tenn. 2008) (citing State v. Dotson, 254 S.W.3d 378, 392 (Tenn. 2008); State v. Dubose, 953 S.W.2d 649, 652 (Tenn. 1997); State v. Van Tran, 864 S.W.2d 465, 477 (Tenn. 1993); and State v. Harris, 839 S.W.2d 54, 73 (Tenn. 1992)). This court also applies an abuse of discretion standard when reviewing a trial court's decision regarding the relevancy of evidence. Dubose, 953 S.W.2d at 652. A trial court is found to have abused its discretion when it applies "an incorrect legal standard or [reaches] a decision which is illogical or unreasonable and causes an injustice to the party complaining." State v. Ruiz, 204 S.W.3d 772, 778 (Tenn. 2006) (citing as an example Howell v. State, 185 S.W.3d 319, 337 (Tenn. 2006)).

---

[1] Hilton argues in his brief that the motion in limine also concerned the charge of aggravated assault. However, the motion in limine was explicitly limited to the aggravated kidnapping charge. Defense counsel also stated at the outset of the motion in limine hearing that his motion concerned only the kidnapping charge. Additionally, Hilton's argument in his motion for new trial was also limited to the kidnapping charge.

Hilton claims that the present case is comparable to State v. Brown, 823 S.W.2d 576 (Tenn. Crim. App. 1991), in which this court held that the facts of the case warranted a general unanimity instruction. Id. at 583. Hilton's reliance on Brown is misplaced. First, the defendant in Brown was not appealing the denial of a motion in limine, and Hilton does not claim the trial court should have provided a general unanimity instruction. Additionally, the facts in Brown are clearly distinguishable. There, the indictment charged the defendant with possession of cocaine without specifying a time or a place. Id. at 581. Based on the evidence presented, the defendant could have committed the offense on four different occasions. Id. Here, the indictment specified that Hilton committed aggravated kidnapping by using a deadly weapon. The trial court instructed the jury that the offense required proof that Hilton "possessed or threatened the use of a deadly weapon." The jury was not told that the statute for aggravated kidnapping set forth other ways to commit the offense. Additionally, the jury was not instructed that Hilton could be found guilty if the State proved that the victim suffered bodily injury.

Hilton also claims in his brief that evidence of the victim's injuries was not relevant and was highly prejudicial. Evidence is considered relevant if it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Tenn. R. Evid. 401. Evidence which is not determined to be relevant is inadmissible. Tenn. R. Evid. 402. In addition, "[a]lthough relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Tenn. R. Evid. 403. At the motion hearing, the trial court found that the evidence at issue was probative to whether the victim was falsely imprisoned. It also found that the evidence would not affect the jury's ability to decide whether Hilton committed the offense as charged. We agree with the trial court that the evidence was relevant to determine whether Hilton falsely imprisoned the victim. The evidence corroborated the victim's testimony about the measures Hilton took in restraining her. We also conclude that, in light of the proper jury instruction, Hilton was not unfairly prejudiced by the admission of the evidence.

Lastly, Hilton claims evidence of the victim's injuries should not have been admitted under Rule 404(b)(4) of the Tennessee Rules of Evidence. This rule states:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity with the character trait. It may, however, be admissible for other purposes. The conditions which must be satisfied before allowing such evidence are:

-9-

(4) The court must exclude the evidence if its probative value is outweighed by the danger of unfair prejudice.

Although Hilton generally moved to exclude "other bad acts" in his motion in limine, as previously noted, he failed to specify the grounds for the exclusion or provide any argument supporting the motion. Our analysis of this issue is further hampered because Hilton failed to raise this issue before the trial court in his motion for a new trial. Tennessee Rule of Appellate Procedure 3(e) states, in pertinent part, that "in all cases tried by a jury, no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Rule 3(e) results in waiver of all issues which, if found to be meritorious, would result only in the granting of a new trial. State v. Keel, 882 S.W.2d. 410, 416 (Tenn.Crim.App.1994). However, the waiver provision does not apply when the issue, if found to be meritorious, would result in the dismissal of the prosecution against the accused. Id. We find that the waiver provision under Rule 3(e) is applicable, and therefore this issue is waived.

Because Hilton waived this issue, we may only review it for plain error. See T.R.A.P. 36(b) ("When necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal."). In State v. Adkisson, this court stated that in order for an error to be considered plain:

(a) the record must clearly establish what occurred in the trial court;

(b) a clear and unequivocal rule of law must have been breached;

(c) a substantial right of the accused must have been adversely affected;

(d) the accused did not waive the issue for tactical reasons; and

(e) consideration of the error is "necessary to do substantial justice."

899 S.W.2d 626, 641-42 (Tenn. Crim. App. 1994) (citations omitted). All five factors must be shown, and it is not necessary to consider every factor if it is obvious that one of the factors cannot be established. State v. Smith, 24 S.W.3d 274, 282-83 (Tenn. 2000).

Consideration of this issue is not necessary to do substantial justice because no clear and unequivocal rule of law was breached. Presuming Hilton is referring to the victim's injuries as the other bad acts, these acts occurred during the instant offense. Moreover, as

-10-

discussed above, the evidence of the victim's injuries was offered to corroborate the victim's testimony regarding her confinement and the element imprisonment. We conclude that the victim's testimony regarding her injuries was very limited and did not unfairly prejudice Hilton. The trial court's denial of Hilton's motion in limine did not amount to plain error. Accordingly, he is not entitled to relief on this issue.

## CONCLUSION

Based on the foregoing, the judgments of the trial court are affirmed.

_____

CAMILLE R. McMULLEN, JUDGE