IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs April 1, 2003

## STATE OF TENNESSEE v. THOMAS L. JACKSON

**Appeal from the Circuit Court for Lauderdale County**
**No. 7248     Jon Kerry Blackwood, Judge**

---

**No. W2002-01631-CCA-R3-CD  - Filed June 10, 2003**

---

A Lauderdale County Jury convicted the Appellant, Thomas L. Jackson, of possession of contraband in a penal institution, a class C felony. On appeal, Jackson argues that the evidence was insufficient to support his conviction. After review, we conclude that the proof is sufficient to establish that Jackson knowingly possessed the marijuana found in his cell. Accordingly, the judgment of conviction is affirmed.

**Tenn. R. App. P. 3; Judgment of the Circuit Court Affirmed.**

DAVID G. HAYES, J., delivered the opinion of the court, in which GARY R. WADE, P.J., and THOMAS T. WOODALL, J., joined.

Didi Christie, Brownsville, Tennessee, for the Appellant, Thomas L. Jackson.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Braden H. Boucek, Assistant Attorney General; Elizabeth T. Rice, District Attorney General; and Tracey Anne Brewer, Assistant District Attorney General, for the Appellee, State of Tennessee.

## OPINION

### Factual Background

Approximately a week before November 29, 2001, Bobby Reynolds, Jr., an employee of the West Tennessee Security Prison, was monitoring phone calls and "heard where an inmate, [Robert Stokes,] had supposedly been making a drug deal, bringing drugs into the institution." However, Reynolds was unable to determine the exact date Stokes intended to bring the drugs into the prison. On the morning of the 29th, Reynolds, along with Corporal Michael Ottinger, a correctional officer, reviewed a phone call from Stokes to his wife, Monica, made the prior evening around 8:30 p.m. According to Reynolds, Stokes "told his wife that he wanted ten dollars put on his thing." Money is not needed inside the penitentiary after 8:30 p.m. Ottinger testified that, in his experience, "ten

dollars on my stuff" was a method of arranging a drug deal. During the conversation between Stokes and his wife, the Appellant "got on the phone, there was some three-ways made to some people that he knew on the streets. . . . There was some meetings set up between these individuals and Monica Stokes, . . . and it was also – instructions were given in the particular call to be sure and use gray duct tape." Ottinger testified that the Appellant "was the one in making the – setting up the deal for these other two individuals to meet Monica Stokes."

After reviewing the telephone conversation, Reynolds went and "shook down" the cells of Stokes and the Appellant. Reynolds found a cell phone inside Stokes cell, and he then proceeded to the Appellant's cell, where he "found a large amount of marijuana right inside on the shelf." Regarding the search of the Appellant's cell, Reynolds testified as follows:

> I was waiting for the pod officer to get there to open the door for me, and I was looking through the window, and I seen [the Appellant] over there where his shelf is with his clothes on fumbling with it, so when the pod officer opened the door, I walked past [the Appellant] and went over there, and he had two gray gloves – they was vinyl or something – and I looked inside of them and there was two big wads of gray tape there. . . ."

Thereafter, the Appellant waived a Department of Correction disciplinary hearing and pled guilty to possession of marijuana. At trial, the Appellant stated, he pled guilty in order to protect his cellmate, who was due to be released in two weeks. The Appellant also claimed that, when he spoke to Monica Stokes, he was arranging a date for his brother. According to the Appellant, Stokes left the gloves in the Appellant's cell, and he was unaware that they contained marijuana.

The case was subsequently presented to the Grand Jury of Lauderdale County, and the Appellant was indicted for possession of contraband in a penal institution and possession of marijuana with intent to sell. Following a jury trial, the Appellant was found guilty of possession of contraband in a penal institution. The Appellant subsequently filed a motion for judgment of acquittal and/or new trial, which was denied.[1] The Appellant now appeals contending that: (1) the evidence is insufficient to support his conviction, and (2) the trial court erred in denying his motion for judgment of acquittal.[2]

---

[1] According to the motion for judgment of acquittal and/or new trial, the Appellant moved the trial court for judgment of acquittal following the State's proof. However, after a review of the record, it appears that the motion for judgment of acquittal was only made in conjunction with the motion for new trial and not following the State's proof as asserted by the Appellant.

[2] Although the Appellant challenges the trial court's ruling regarding his motion for judgment of acquittal and/or new trial, the Appellant has failed to include in the record for our review the transcript of the hearing on the motion. "When an accused seeks appellate review of an issue in this court, it is the duty of the accused to prepare a record which conveys a fair, accurate and complete account of what transpired with respect to the issue[] which forms the basis of the appeal." *State v. Taylor*, 992 S.W.2d 941, 944 (Tenn. 1999). Accordingly, when this court is presented with an incomplete record, which does not contain a transcript of the relevant proceedings, this court is precluded from

(continued...)

**ANALYSIS**

A motion for judgment of acquittal raises a question of law for the trial court's determination. *State v. Hall*, 656 S.W.2d 60, 61 (Tenn. Crim. App. 1983). When the trial court is presented with a motion for judgment of acquittal, the only concern is the legal sufficiency, as opposed to the weight, of the evidence. *State v. Blanton*, 926 S.W.2d 953, 957 (Tenn. Crim. App. 1996). Appellate courts are ill-suited to assess whether the verdict is supported by the weight and credibility of the evidence. *State v. Moats*, 906 S.W.2d 431, 435 (Tenn. 1995). For that reason, in Tennessee, the accuracy of a trial court's thirteenth juror determination is not a subject of appellate review. *Id*.; *State v. Burlison*, 868 S.W.2d 713, 719 (Tenn. Crim. App. 1993). Instead, once the trial court approves the verdict as the thirteenth juror, appellate review is limited to determining the sufficiency of the evidence. *Burlison*, 868 S.W.2d at 719.

Accordingly, the standard by which the trial court determines a motion for judgment of acquittal at the end of all the proof is, in essence, the same standard which applies on appeal in determining the sufficiency of the evidence after a conviction; that is, whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *State v. Gillon*, 15 S.W.3d 492, 496 (Tenn. Crim. App. 1997) (citing *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781 (1979)). A jury conviction removes the presumption of innocence with which a defendant is cloaked and replaces it with one of guilt, so that on appeal, a convicted defendant has the burden of demonstrating that the evidence is insufficient. *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). In determining the sufficiency of the evidence, this court does not reweigh or reevaluate the evidence. *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). Likewise, it is not the duty of this court to revisit questions of witness credibility on appeal, that function being within the province of the trier of fact. *State v. Holder*, 15 S.W.3d 905, 911 (Tenn. 1999); *Burlison*, 868 S.W.2d at 719. Moreover, the State is entitled to the strongest legitimate view of the evidence and all reasonable inferences which may be drawn therefrom. *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992). These rules are applicable to findings of guilt predicated upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990).

The Appellant argues that the evidence was not sufficient to prove that he knowingly possessed the contraband. Specifically, he contends that "no proof was presented that the marijuana belonged to [him] or that he knew the marijuana was in his cell." To convict the Appellant, the State was required to prove that: (1) he possessed a controlled substance in a penal institution; (2) he did so without express written consent; and (3) he acted knowingly. Tenn. Code Ann. § 39-16-201(a)(2) (1997); 7 TENNESSEE PRACTICE, TENNESSEE PATTERN JURY INSTRUCTIONS-CRIMINAL 23.01 (Comm. of the Tenn. Judicial Conference 5th ed. 2000). Proof that a possession is knowing will usually

---

[2](...continued)
considering the issue and must conclusively presume that the trial court's ruling was correct. *State v. Griffis*, 964 S.W.2d 577, 593 (Tenn. Crim. App. 1997); *State v. Matthews*, 805 S.W.2d 776, 784 (Tenn. Crim. App. 1990). Nevertheless, from the record before us, we can determine that the trial court properly denied the motion.

depend on inference and circumstantial evidence. *State v. Timothy E. Higgs*, No. W1999-01534-CCA-R3-CD (Tenn. Crim. App. at Jackson, July 24, 2000) (citing *United States v. Pierre*, 932 F.2d 377, 392 (5th Cir. 1991); *State v. Brown*, 915 S.W.2d 3, 7 (Tenn. Crim. App. 1995)). A conviction of possession of drugs may be based upon either actual or constructive possession. *State v. Cooper*, 736 S.W.2d 125, 129 (Tenn. Crim. App. 1987). The State may establish constructive possession by demonstrating that a defendant has the power and intention to exercise dominion and control over the controlled substance either directly or through others. *State v. Transou*, 928 S.W.2d 949, 956 (Tenn. Crim. App. 1996) (citations omitted). In essence, constructive possession is the ability to reduce an object to actual possession. *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991) (citations omitted).

In the present case, the jury could have found the elements of the offense beyond a reasonable doubt. Reynolds and Ottinger testified that, after reviewing the phone call, the Appellant was the individual who arranged for drugs to be smuggled into the institution. During the phone conversation, there were instructions given to package the marijuana in duct tape. Reynolds testified that, while he was waiting to enter the Appellant's cell, the Appellant "[l]ooked like he was trying to put something under some pants or a shirt or something." A large amount of marijuana, 95.8 grams, was inside the gloves found in the Appellant's cell. No consent was given by the chief administrator to allow the drugs into the institution. Furthermore, the Appellant admitted his guilt in the Department of Correction proceedings. We find that the evidence presented at trial was more than sufficient to support the Appellant's conviction. Accordingly, the judgment of conviction for possession of contraband in a penal institution is affirmed.

_____
DAVID G. HAYES, JUDGE