IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT  NASHVILLE
Assigned on Briefs  September 25, 2001

## STATE OF TENNESSEE v. ANGELA H. BLACK

**Direct Appeal from the Criminal Court for Davidson County**
**No.  99-B-1040      Steve R. Dozier, Judge**

---

**No. M2000-02368-CCA-R3-CD - Filed October 12, 2001**

---

A Davidson County jury convicted the defendant of theft over $60,000, a Class B felony.  The defendant contends in this appeal that (1) the trial court erred in allowing the testimony of a state's witness who heard the victim's testimony despite the trial court's order to sequester witnesses; and (2) the trial court erred in not giving an enhanced unanimity instruction.  We affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, J., delivered the opinion of the court, in which JOSEPH  M. TIPTON and ALAN E. GLENN, JJ., joined.

Ross E. Alderman, Public Defender; C. Dawn Deaner, Assistant Public Defender (at trial and on appeal); and James P. McNamara, Assistant Public Defender (at trial), for the appellant, Angela H. Black.

Paul G. Summers, Attorney General and Reporter; Jennifer L. Bledsoe, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; and Bret Thomas Gunn, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

Over a period of three years, the defendant, a bookkeeper, embezzled over $165,000 from her employer, Nashville Steel Rule and Die, Inc., by altering over 150 checks.  Some of the checks were for legitimate payments to the defendant, but she altered the amount of the checks.  Other checks were intended for the company's suppliers, but instead she made them payable to herself.  The indictment aggregated the separate acts into the single offense of theft over $60,000, and the jury convicted the defendant as charged.

# I. VIOLATION OF "THE RULE" OF WITNESS SEQUESTRATION

The defense moved pursuant to Tenn. R. Evid. 615 for the court to exclude all witnesses from the courtroom, and the trial court granted the motion.

Meryl Stinson, a certified public accountant and accountant for Nashville Steel Rule and Die, testified for the state that she discovered checks were missing from the company's bank statements. Upon reviewing copies of the missing checks, Stinson discovered most of them were made payable to the defendant although the defendant's entries in the check register showed they were, for the most part, written to suppliers. While explaining the company's computerized bookkeeping system, Stinson said it would not allow entry of two checks with the same number for differing amounts. Stinson said there were notations on the checks referring to the names of suppliers as well as to certain country music entertainers, but stated she was not aware of any business that the company would have conducted with entertainers. Stinson also reviewed copies of the defendant's bank records and found there were deposits in the defendant's checking account corresponding with the misappropriated checks.

After Stinson testified, the prosecutor advised her she could remain in the courtroom. Thus, she stayed in the courtroom and heard the testimony of the state's next witness, Dennis Lane, the president and owner of Nashville Steel Rule and Die. Lane stated some legitimate payments were made to the defendant for her wages, loans, and reimbursements for small expenses. He also testified that the defendant did not have his permission to alter the checks.

During cross-examination, the defendant's attorney questioned Lane regarding "finishing" work performed by his company which involved assembling boxes. This work was performed by contract laborers who were paid for each piece they completed, as well as hourly employees who were paid their regular wage. The contract laborers were paid from the company's business account. When questioned regarding payments made to defendant for her work on these "finishing" jobs, Lane stated the defendant was paid her normal hourly wage from a separate payroll account. Lane testified some of the "finishing" work could have related to products for the country music industry, and the notations written on some of the checks referred to certain country music artists.

Following Lane's testimony, the state recalled Meryl Stinson to the witness stand. The defense objected on the grounds that Stinson had remained in the courtroom during Lane's testimony. The trial court overruled the objection, noting the state had reason to recall Stinson in rebuttal to the cross-examination of Lane regarding the company's "finishing" business.

Stinson testified that after court recessed the day before, she operated the company's computer to determine if it would allow duplicate entries of the same check number. She found that it did allow her to enter identical check numbers with different dates and amounts. She also testified the company's financial statements contained information regarding the "finishing" work, including the expenses related to the work. Under the category of contract labor expenses, the statements

included a list of payments to specific contract laborers; however, they did not include any payments made to defendant.

The defendant contends the trial court erred in allowing Stinson to testify after hearing Lane's testimony. We respectfully disagree.

Rule 615 of the Tennessee Rules of Evidence provides:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

We note that Rule 615 does not prescribe a specific sanction for its violation. Instead, courts retain the discretion to impose a variety of sanctions appropriate to the circumstances. State v. Anthony, 836 S.W.2d 600, 605 (Tenn. Crim. App. 1992); *see also* N. Cohen et al., **Tennessee Law of Evidence** § 6.15[11][b] (4th ed. 2000) . The trial court may, as a sanction, exclude the testimony of a witness who hears other testimony while subject to a sequestration order. *See* State v. Weeden, 733 S.W.2d 124, 125 (Tenn. Crim. App. 1987). The decision to exclude or allow the testimony is a matter within the discretion of the trial court, subject to a showing of abuse and prejudice to the complaining party. State v. Chadwick, 750 S.W.2d 161, 166 (Tenn. Crim. App. 1987).

In the instant case, the trial court indicated it found the state was taken by surprise by defense counsel's line of questioning regarding the victim's expense for the "finishing" work and demonstrated a need to present the testimony of Meryl Stinson to rebut the inferences made by defense counsel during Lane's cross-examination. In light of this finding, we conclude the trial court did not abuse its discretion in allowing Stinson to again testify following Lane's testimony.

Regardless, we conclude that the defendant has not shown she was unduly prejudiced by Stinson's subsequent testimony. There is no evidence that Stinson altered her testimony to conform to Lane's. Stinson's testimony was presented to rebut the defense's inference, made through the cross-examination of Lane, that some of the payments alleged to be thefts were actually legitimate payments made to the defendant for her assistance with the "finishing" work. Stinson also corrected her previous testimony regarding the operation of the company's bookkeeping software. This

testimony was not related to Lane's, but was merely a correction of her own prior testimony.  This issue is without merit.

## II.  ENHANCED UNANIMITY INSTRUCTION

The defendant also argues the trial court erred in not giving the jury an enhanced instruction regarding the necessity of a unanimous verdict.  She submits that since the proof of the theft involved over 150 separate checks and each check, or even different groups of checks, could have either supported different theft convictions or been found by the jury to be legitimate payments, there was a danger of a "patchwork" verdict, thus requiring an enhanced unanimity instruction.  We disagree.

This case was prosecuted as a single offense.  *See* State v. Cattone, 968 S.W.2d 277, 279 (Tenn. 1998) (holding aggregation of value of stolen property taken in separate acts of theft is permissible when (1) taken from the same owner, (2) from the same location, and (3) pursuant to a single sustained larcenous scheme).  The defendant concedes there was no need for an election of offenses since multiple offenses were not committed.  *See* State v. Adams, 24 S.W.3d 289, 294 (Tenn. 2000).

Defendant relies heavily upon State v. Brown, 823 S.W.2d 576 (Tenn. Crim. App. 1991), relating to the need for an enhanced unanimity instruction.  The evidence in Brown established the defendant's simultaneous possession of cocaine located on two separate, but adjoining, properties.  Judge Tipton, writing for the court, concluded there was a real potential for a conviction based upon different jurors concluding that the defendant committed different acts, "each of which separately [constituted] the commission of an offense." *Id*. at 583.  This court concluded an enhanced unanimity instruction was necessary to insure the jury understood its duty to agree unanimously to a particular set of facts.  *Id*.

Brown was cited, but distinguished, by our supreme court in State v. Lemacks, 996 S.W.2d 166, 170 (Tenn. 1999).  Lemacks noted that Brown involved "several possible criminal events." *Id*. Lemacks, according to the court, involved only one set of facts relating to the charge of DUI.  Therefore, the supreme court concluded the jury was properly instructed it could convict based upon defendant's actual operation of the vehicle or upon his criminal responsibility for allowing another intoxicated person to drive.  *Id*. at 171.  No enhanced unanimity instruction nor election of offense was required.  *Id*.

More recently, our supreme court ruled that no election or enhanced unanimity instruction is required as to facts supporting a particular element of a crime; provided, the jury agrees that the defendant is guilty of the crime charged.  State v. Johnson, ___ S.W.3d ___, ___ (Tenn. 2001). More specifically, the court noted that the enhanced unanimity instruction was unnecessary because "[t]he record indicated only one offense." *Id*. at ___.

In light of <u>Lemacks</u>, <u>Adams</u>, and <u>Johnson</u>, we are uncertain as to the continued vitality of <u>Brown</u>. We do, however, conclude that <u>Johnson</u> appears to be controlling of the case *sub judice*.

Here, the various alleged acts constituted but one offense of theft. An enhanced unanimity instruction was not required, provided each juror agreed that the aggregate theft was over $60,000. The general unanimity jury instruction was sufficient to ensure that each juror concluded the defendant was guilty of theft over $60,000.

## CONCLUSION

Accordingly, we affirm the judgment of the trial court.

_____
JOE G. RILEY, JUDGE