IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs November 15, 2005

## STATE OF TENNESSEE v. TIMOTHY WRIGHT

**Appeal from the Circuit Court for Tipton County**
**No. 4881     Joseph H. Walker, Judge**

**No. W2005-00525-CCA-R3-CD  - Filed December 27, 2005**

The defendant, Timothy Wright, appeals from his Tipton County Circuit Court jury conviction of
aggravated assault, which resulted in a four-year sentence to be served through 220 days'
confinement, with the defendant placed in a community corrections program for the balance of the
sentence.  The defendant's single issue on appeal is his claim that the trial court erred in permitting
the victim/prosecuting witness "to remain in the courtroom and testify last at trial."  Because we
discern no reversible error in the proceedings in the circuit court, we affirm the conviction.

**Tenn. R. App. P. 3; Judgment of the Circuit Court is Affirmed.**

JAMES CURWOOD WITT, JR., J., delivered the opinion of the court, in which NORMA MCGEE OGLE
and J.C. MCLIN, JJ., joined.

Gary F. Antrican, District Public Defender; David S. Stockton, Assistant District Public Defender
(at trial); and J. Barney Witherington, IV,  Covington, Tennessee (on appeal), for the Appellant,
Timothy Wright.

Paul G. Summers, Attorney General & Reporter; Jennifer L. Bledsoe, Assistant Attorney General;
Elizabeth Rice, District Attorney General; and James Walter Freeland, Assistant District Attorney
General, for the Appellee, State of Tennessee.

### OPINION

The defendant's aggravated assault conviction resulted from events that transpired
on the night of September 27-28, 2003, culminating in injuries to Angelina Funches, the victim.  *See*
Tenn. Code Ann. § 39-13-102(a)(2)(A) (2003) (proscribing as aggravated assault certain assaults that
cause serious bodily injury).  At the time of the offense, the defendant was, or recently had been, the
victim's boyfriend.

Although the defendant does not challenge the sufficiency of the convicting evidence,
a summary of the evidence is necessary to place the defendant's issue in context.  Before the state

called its first witness at trial, the prosecutor requested that the trial court allow the state to designate the victim as its representative to remain in the courtroom prior to her giving her own testimony. The defendant objected to this procedure, but the trial court overruled the objection and allowed the victim to remain in the courtroom during the state's presentation of testimony from Geraldine Funches (the victim's mother), Tracy Gaba (a hospital records custodian), and Chris Ellwood (the investigating police officer). The victim then testified as the state's final witness. After the state rested, the defendant testified on his own behalf.

According to Geraldine Funches, the victim was approximately 30 years of age in September 2003. The victim and her young son resided in an apartment in Memphis, and since December 2002, the victim had maintained a relationship with the defendant. When Geraldine Funches discovered that the victim did not return home following her work shift on Saturday evening, September 27, 2003, Ms. Funches obtained the address of the defendant's mother's home in Atoka, Tipton County. Ms. Funches then went to Atoka, contacted the police, and accompanied them to the residence. The victim exited the residence, and Geraldine Funches noticed that one side of the victim's face was swollen and that the victim could not hear well. Geraldine Funches also testified that the victim was bruised on her face, chest, thigh, and "all on her hip and stuff."

The records custodian at Baptist Tipton Hospital testified that the victim came to the hospital at 3:30 p.m. on Sunday, September 28, 2003. The victim complained that her boyfriend hit her in the head, face, ears, and buttocks with his fists. The treating physician diagnosed a partial rupture of the inner ear membrane.

Officer Ellwood testified that he and another officer accompanied Geraldine Funches to the defendant's mother's address in Atoka. The other officer called the residence, and shortly thereafter, the victim and the defendant exited the house. Officer Ellwood noticed contusions on the victim's face and neck. He testified that the defendant was very cooperative and submitted peacefully to his arrest.

The victim testified that her relationship with the defendant had been "bad and good." She testified that she had decided to end the relationship and told the defendant so on September 27, 2003, when both parties were at work as cooks in the Horseshoe Casino in Tunica, Mississippi. The victim testified that the couple had driven to work that day together in a car titled in the victim's name but owned by the defendant. The defendant was working a shift that ended a few hours after the victim's shift ended, but when the defendant learned of the victim's decision to end the relationship, he left work with the victim. The victim testified that the defendant drove, but instead of taking the victim to her apartment, he drove to his mother's residence in Atoka, arriving at approximately 8:30 p.m. There, he began hitting her with his fists and knocked her down. She retreated into a bedroom, and the defendant resumed his assault in the bedroom. The victim testified, "The licks were very intense." She described pain in her right ear, followed by a loss of hearing. She denied that she did anything physically to provoke the attack. The victim testified that she did not try to call 9-1-1 because she was scared and that the defendant would not let her call her mother. She testified that she and the defendant were alone at the residence. She admitted that, in the hours

following the assault, she engaged in sexual intercourse with the defendant but did so because she was afraid to say "no." She testified that, as of the time of trial, she still had a ringing sound in her ear.

The defendant, a minister, testified that his relationship with the victim began as a good friendship, grounded in their study of the Bible and in her taking care of him following his heart surgery. He lamented that, despite his being married to another woman, the relationship with the victim gave way to concerns of the "flesh." He testified that, because of the strains on their friendship caused by their sexual activity, he was the one who ended the relationship on September 27 at the Horseshoe Casino and that "[s]he was not in agreement with it." He testified that the victim then accompanied him to his mother's house in Atoka, where she initiated an altercation by slapping the defendant. He admitted hitting the victim twice with his open hand as "a reaction" to the victim's initial attack. He denied that he was afraid of the victim and denied hitting her in the ear and on her buttocks. He testified that the victim had injured the defendant's face but acknowledged that he had never pointed out this injury to anyone. He testified that some of the victim's apparent wounds were actually the results of her being burned at work a few weeks before September 27, and he conjectured that some of her bruises were the result of blows inflicted by the victim's brother.

Based upon the foregoing evidence, the jury convicted the defendant of aggravated assault via causing serious bodily injury to the victim.

On appeal, the defendant cites as error the trial court's overruling of his objection to the state's retention of the victim in the courtroom during the state's case in chief. In particular, the defendant claims that this procedure runs afoul of principles of due process and that this court should reverse the conviction, even though the defendant can show no prejudice resulting from the claimed error.

Tennessee Rule of Evidence 615 governs the exclusion of witnesses during a trial or hearing:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's

discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

Tenn. R. Evid. 615. "The trial court may, as a sanction, exclude the testimony of a witness who hears other testimony while subject to a sequestration order." *State v. Black*, 75 S.W.3d 422, 424 (Tenn. Crim. App. 2001). "The decision to exclude or allow the testimony is a matter within the discretion of the trial court, subject to a showing of abuse *and prejudice to the complaining party*." *Id*. at 424-25 (emphasis added).

Rule 615 essentially replaced Tennessee Code Annotated section 24-1-204, which excluded parties to the suit from the rule of sequestration of witnesses and which was repealed in 1991. *See* Tenn. Code Ann. § 24-1-204 (2000) (repealed Acts 1991, ch. 273, §§ 8, 9); *see also Black*, 75 S.W.3d at 425. With the statutory exemption in place, the Tennessee Supreme Court had said, "[T]he court should impose as a condition that the State, if it desires to use the prosecutor as a witness, should examine him first." *Smartt v. State*, 112 Tenn. 539, 551, 80 S.W. 586, 588 (1904). The Court of Criminal Appeals has said, "We do not believe that Rule 615 affects *Smartt*'s requirement that the state's designated person testify first." *State v. Timmy Reagan*, No. M2002-01472-CCA-R3-CD, slip op. at 18 (Tenn. Crim. App., Nashville, May 19, 2004). That said, the *Timmy Reagan* court recognized an exception in the case of expert witnesses, *see id.*, slip op. at 18; *State v. Bane*, 57 S.W.3d 411, 423 (Tenn. 2001), and more significantly, that court applied the rule that the party aggrieved by the designated witness's deferred testimony must show prejudice via the designated witness "improperly chang[ing] his [or her] testimony while hearing other witnesses testify," *Timmy Reagan*, slip op. at 18; *see Mothershed v. State*, 578 S.W.2d 96, 100-01 (Tenn. Crim. App. 1978).

In the present case, the defendant does not claim that the victim improperly changed her testimony while hearing her mother and two other witnesses testify. Rather, he claims that no defendant should be required to establish prejudice before gaining a reversal when the trial court allows the state's designated witness to testify last. The defendant bases this claim to reversible error *per se* upon principles of due process. He argues, "[T]he requirement that a defendant show how a person's testimony would have differed, but for violation of 'the rule,' creates a virtually impossible burden for a defendant to overcome."

The defendant's eloquent protestations aside, the argument is unsupported by citation to authority. The requirement of prejudice is part and parcel of the *Smartt* rule otherwise relied upon by the defendant. *See also Smartt*, 112 Tenn. at 551, 80 S.W. at 588 (" [I]nasmuch as we cannot see that any substantial injury was done to the defense . . . by [not requiring the designated witness to testify first], it cannot be treated as reversible error in the present case."). We, therefore, see no reason to jettison one part of the rule while retaining only the part that is beneficial to the defendant. We are unpersuaded that the full application of the *Smartt* rule somehow undermines fundamental fairness that due process requires.

For these reasons, we reject the defendant's claim that the trial court's allowing the victim to testify last among the state's witnesses was *per se* reversible error. Accordingly, the judgment of the circuit court is affirmed.

 

_____
JAMES CURWOOD WITT, JR., JUDGE