IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
April 22, 2014 Session

**STATE OF TENNESSEE v. WILLIAM CREGGAR SNODGRASS**

**Appeal from the Criminal Court for Knox County**
**No. 97143     Mary Beth Leibowitz, Judge**

---

**No. E2013-01741-CCA-R3-CD - Filed June 17, 2014**

---

Appellant, William Creggar Snodgrass, was convicted of attempted rape, a Class C felony. The trial court sentenced appellant to eight years to be served in the Tennessee Department of Correction. On appeal, appellant argues that: (1) the trial court erroneously instructed the jury regarding flight; (2) the trial court erred in allowing testimony from an unsequestered witness; and (3) the evidence at trial was insufficient to support his conviction. Following our review of the parties' briefs, the record, and the applicable law, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROGER A. PAGE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ALAN E. GLENN, JJ., joined.

Jonathan D. Cooper, Knoxville, Tennessee, for the appellant, William Creggar Snodgrass.

Robert E. Cooper, Jr., Attorney General and Reporter; Benjamin A. Ball, Senior Counsel; Randall Eugene Nichols, District Attorney General; and Leslie Nassios, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

This case arose from the October 2010 attempted rape of a homeless woman in a wooded area. A Knox County grand jury indicted appellant on one count of attempted aggravated rape and two counts of attempted rape. The State dismissed the attempted aggravated rape charge and one of the attempted rape charges prior to trial, leaving one count of attempted rape. The trial on this charge began on March 4, 2013, and the jury found appellant guilty.

## I. Facts

At appellant's trial, the State presented the victim, K.S.,[1] as its first witness. She acknowledged that in October 2010, she was "living on the streets and sometimes going to the Mission." The Mission was a place for economically disadvantaged people to sleep, eat, and care for their hygiene. She explained that she knew appellant from seeing him in the neighborhood. At 1:00 p.m. on October 5, 2010, the victim was in a wooded area near the Mission rolling tobacco cigarettes, which she sold for ten cents each. She had just finished when a man approached her from behind, grabbed her breasts, and attempted to remove her shirt and force her to the ground. He said, "'I'll f*** you in the a** and make you like it.'" The victim stated that she fought free from the man's grasp by kicking him in the left knee. She then began to flee. The victim explained that as she ran away, she looked back and recognized appellant. She stated that appellant's pants were unzipped and that he had exposed his penis. The victim was "very scared" and ran back toward the Mission. She encountered her boyfriend and her boyfriend's friend. Both men encouraged her to go into the Mission and call the police, which she did. The victim stated that after she explained what had occurred, officers transported her to the police station and took her written statement. She also made a photographic identification of appellant.

During cross-examination, the victim, through the use of pictures, identified where the incident occurred and explained that while she had heard noises behind her, she attributed the noises to wildlife. She also stated that to her knowledge, there was no one else in the wooded area when the incident occurred. The victim clarified that she did not scream during the attack but that she kicked appellant once in the knee and retrieved her belongings before she ran away. Appellant released her after she kicked him. The victim stated that she was certain that she called the police on the same day that the incident occurred.

Preston Whillock, a Knoxville police officer, testified that on October 5, 2010, he responded to a call from the victim. Officer Whillock stated that the victim appeared "shaken" but that she was able to clearly explain what had occurred. The victim's statement was substantially similar to her testimony at trial. Officer Whillock then took the victim to meet with Investigator Jason Booker. Officer Whillock testified that he also participated in the arrest of appellant at a market on October 11, 2010. He explained that he and another officer recognized appellant and arrested him inside the market without incident. After appellant was placed in the police car, appellant asked the officers to retrieve his backpack from the back porch of an abandoned house that was behind the market, which they did.

---

[1] It is the policy of this court to refer to victims of sexual crimes by their initials.

During cross-examination, Officer Whillock stated that he responded to the victim's emergency call at approximately 12:45 p.m. and that the victim identified appellant as "Snodgrass." He also acknowledged that no one other than the victim saw appellant in the area of the attack on October 5. Officer Whillock explained that on October 11, he and another officer were looking for appellant when they saw him walk into the market. He also acknowledged that appellant did not resist arrest and that appellant asked why he was being arrested. Officer Whillock denied that appellant spoke to anyone on a cellular telephone while with the officers.

The State's last witness was Jason Booker, who was a violent crimes investigator with the Knoxville Police Department on October 5, 2010. He testified that on that date, he interviewed the victim. She was "visibly upset" and "shaken," but she was able to articulate what had occurred. She also provided a written statement and photographic identification of appellant. Investigator Booker recalled that the victim's statement was consistent with her report to Officer Whillock. The State rested its case-in-chief.

On behalf of appellant, Jerry Wolfenbarger testified that he had known appellant since appellant was a child and that he stayed at Mr. and Mrs. Wolfenbarger's home "[o]ff and on." He explained that in October 2010, appellant arrived at his home on a Monday morning and stayed at their home for a week. He recalled that appellant was ill with a virus when he arrived and that appellant did not leave the Wolfenbargers' property alone during his stay. Appellant left their home on a Sunday. Mr. Wolfenbarger explained that the following Monday, an investigator came to his home and told him that appellant had been arrested. Mr. Wolfenbarger told the investigator that appellant could not have committed a crime on October 5 because appellant was at his home.

During cross-examination, Mr. Wolfenbarger acknowledged that he was "fond" of appellant and that he had been "really involved" in helping appellant throughout appellant's life. He also conceded that appellant could view his home as a "sanctuary." Mr. Wolfenbarger initially denied that after Investigator Brian Moran informed Mr. Wolfenbarger that appellant had an outstanding warrant, he responded, "That's the reason why he come [sic] here, trying to hide out." However, he then conceded that he had difficulty remembering "one day to the next" due to a head injury he had sustained after being thrown from a truck and that he might be mistaken about what he told Investigator Moran. Mr. Wolfenbarger also denied telling Investigator Moran that appellant was "drunk sick" when he arrived and asserted that appellant had been ill with the flu. During recross-examination, Mr. Wolfenbarger asserted that he would not say something untrue to help appellant.

Joyce Wolfenbarger, Mr. Wolfenbarger's wife, testified next that she had known appellant for twenty years and that he stayed with her and her husband about "every other

month or something like that." Mrs. Wolfenbarger stated that appellant came to their home on Monday, October 4 after 2:30 p.m. She stated that when appellant arrived, he "couldn't keep nothin' down and he was chillin'." Appellant stayed at her home for one week and left on Sunday, October 10. Mrs. Wolfenbarger asserted that appellant was at her house on October 5 and that appellant "never left [her] sight" that day.

During cross-examination, Mrs. Wolfenbarger agreed that she was "fond" of appellant and that she had freely opened her home to him. She also agreed that during appellant's stay, appellant accompanied them if she and her husband left their home. Mrs. Wolfenbarger did not remember telling Investigator Moran that appellant had been nervous when he saw a police car or that appellant had been sick from drinking. Mrs. Wolfenbarger acknowledged telling appellant's investigator that she remembered appellant going to the doctor with her the week that appellant stayed at her home but denied telling Investigator Moran that she did not go to the doctor that week. Mrs. Wolfenbarger also acknowledged that although appellant was sick when he arrived, later in the week he repaired her van, worked on the lawn, and fixed a closet. During redirect examination, Mrs. Wolfenbarger affirmed that her interview with Investigator Moran was two and a half years prior to her testimony at trial. She also asserted that she did not remember why appellant was sick when he arrived at her house but that he was feeling better by Thursday of that week.

Appellant testified that he was fifty years old and that he had been homeless for fifteen years "off and on." He also explained that he was an alcoholic and that he drank a "[h]alf a gallon or a little better" of vodka daily. Appellant stated that he was familiar with the area in which the victim alleged her attack occurred and that many individuals in the homeless community walked through and camped in the area. Appellant also admitted that he had been convicted of two counts of theft in 2006, burglary of a vehicle in 2007, and theft in 2009. Appellant asserted that he recognized the victim from seeing her in the community but that he did not know her, had never spoken to her, and had never "made passes at her." He explained that he went to the Wolfenbargers' home on Monday of the week in question because he did not feel well. He stated that he did not leave the house on Monday or Tuesday and that he ran errands with the Wolfenbargers on Wednesday and Thursday. He performed manual labor at the Wolfenbargers' home on Friday. Appellant asserted that there was never a time during that week that he was outside the presence of Mr. and Mrs. Wolfenbarger. He recalled that he learned about the current charge when Investigator Moran explained the situation after he was arrested the following Monday. Appellant told Investigator Moran that he could not have committed the offense because he had been at the Wolfenbargers' home. Appellant testified that he did not call the Wolfenbargers to warn them that they might be contacted by the police and that he had not spoken to the Wolfenbargers since his arrest. Finally, appellant asserted that he never grabbed the victim or attempted to rape her.

-4-

During cross-examination, appellant admitted that two of his convictions were felonies and two were misdemeanors. Appellant conceded that before he was arrested, he knew there was an outstanding warrant against him because someone on the street had informed him the police were looking for him. However, appellant did not remember telling Investigator Moran that "for about four days ago or something[,] I was down there under a bridge with some people" or that he "hung out at the Mission pretty regularly." He also did not remember responding, "Maybe," to Investigator Moran's questions about appellant's being near the Mission on the date in question, October 5, and denied saying, "Don't start me lyin'; I won't be able to stop." He similarly did not remember saying that he had been at the Wolfenbargers' address "since the 4th or 5th." Appellant conceded that he told Investigator Moran that other homeless individuals were jealous of him because he had money from "flying a sign" (holding a sign asking for help) and that he may have said things to people that made them angry. Appellant did not remember saying, "I know I ain't touched nobody [sic]; I know that for a fact. Come through there, maybe, maybe . . ." During redirect examination, appellant affirmed that he gave the statement in question over two and a half years prior to trial and that he simply did not remember what was said. He also stated that the only way he kept track of the days of the week was by knowing that "the liquor store [was] closed on Sunday." Finally, appellant testified that he never asked the Wolfenbargers to lie for him. Appellant, through counsel, rested his case.

The State called Violent Crimes Investigator Brian Moran to testify as its first rebuttal witness. He stated that he interviewed appellant on October 11, 2010. Investigator Moran affirmed that appellant made the above statements that appellant said he could not remember. Investigator Moran also affirmed that toward the end of the interview, appellant told him that he was unsure about his whereabouts on Tuesday, the day of the attempted rape. Investigator Moran testified that Mr. Wolfenbarger said that in the days preceding October 11, appellant behaved nervously when near police cars and that Mr. Wolfenbarger referenced appellant's hiding out at their home. Investigator Moran also testified that both Mr. and Mrs. Wolfenbarger stated that appellant was sick from the consumption of alcohol when he arrived at their home. Investigator Moran explained that Mrs. Wolfenbarger said that appellant did not go to the doctor with her and that she checked on appellant during the night. The State also played the corresponding segments of Mr. and Mrs. Wolfenbarger's recorded statements.

During cross-examination, Investigator Moran affirmed that appellant did not have a calendar with him when he gave his statement. Investigator Moran also conceded that Mr. Wolfenbarger made the statement about appellant coming to their home to hide out before knowing the date of the alleged offense. Investigator Moran acknowledged that Mr. and Mrs. Wolfenbarger consistently stated that appellant arrived at their home on Monday and that appellant remained continuously in their presence for the week.

Vickie Miller, Mrs. Wolfenbarger's cousin and appellant's ex-wife, testified next that Mrs. Wolfenbarger "doesn't tell the truth" and that she had "lied pretty much most of the time [Ms. Miller had] known her." During cross-examination, Ms. Miller testified that she had been married to appellant for over ten years but that they had been divorced for "close to fifteen years." She also explained that she and Mrs. Wolfenbarger "[got] along fine."

The State's last witness was Charles Moore, Mrs. Wolfenbarger's uncle, who testified that Mrs. Wolfenbarger was "incapable of telling the truth" and was "a very untruthful person."

At the conclusion of the trial, the jury found appellant guilty of attempted rape. The trial court sentenced appellant to eight years in the Tennessee Department of Correction.

## II. Analysis

Appellant argues that the trial court erred by instructing the jury regarding flight and by allowing testimony from an unsequestered witness. Appellant also argues that the evidence at trial was insufficient to support his conviction. The State responds that the trial court properly instructed the jury and properly allowed witness testimony. The State also responds that the evidence at trial was sufficient to sustain appellant's convictions. We agree with the State.

## A. Flight Instruction

At the request of the State, the trial court instructed the jury on the inferences that could be drawn from evidence of flight. Appellant argues that this was error because there was insufficient evidence to justify a flight instruction. The State disagrees.

The trial court gave the jury the following instructions regarding flight:

> The flight of a person accused of a crime is a circumstance which, when considered with the other facts of the case, may justify an inference of guilt. Flight is the voluntary withdrawal of oneself for the purpose of evading arrest or prosecution for the crime charged. Whether the evidence presented proves beyond a reasonable doubt that the defendant fled is a question for your determination.
>
> The law makes no precise distinction as to the manner or method of flight. It may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction. However, it takes both a leaving the

scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown, to constitute flight.

If flight is proved, the fact of flight alone does not allow you to find the defendant guilty of the crime alleged. However, since flight by a defendant may be caused by a consciousness of guilt, you may consider the fact of flight, if flight is so proven, along with the other evidence when you decide the guilt or innocence of the defendant. On the other hand, an entirely innocent person may take flight and such flight may be explained by proof offered, or by the facts and circumstances of the case.

Whether there was a flight by the defendant, the reasons for it, and the weight to be given to it, are questions for you to determine.

"It is well-settled in Tennessee that a defendant has a right to a correct and complete charge of the law so that each issue of fact raised by the evidence will be submitted to the jury on proper instructions." *State v. Farner*, 66 S.W.3d 188, 204 (Tenn. 2001) (citations omitted). Therefore, trial courts have a duty to give "a complete charge of the law applicable to the facts of the case." *State v. Davenport*, 973 S.W.2d 283, 287 (Tenn. Crim. App. 1998) (citing *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)). Questions regarding the propriety of jury instructions are mixed questions of law and fact; thus, our standard of review is de novo with no presumption of correctness. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001); *State v. Smiley*, 38 S.W.3d 521, 524 (Tenn. 2001).

There is sufficient evidence to justify a flight instruction when the State has proven "'both a leaving the scene of the difficulty and a subsequent hiding out, evasion, or concealment in the community, or a leaving of the community for parts unknown.'" *State v. Whittenmeir*, 725 S.W.2d 686, 688 (Tenn. Crim. App. 1986) (quoting *Rogers v. State*, 455 S.W.2d 182, 187 (Tenn. Crim. App. 1970)). "The State can satisfy the subsequent hiding out, evasion, or concealment requirement by introducing evidence from which a jury might infer such action." *State v. Deeric McAfee*, No. E2010-01730-CCA-R3-CD, 2013 WL 794330, at *13 (Tenn. Crim. App. Mar. 4, 2013) (citing *State v. Terrance Wilks*, No. W1999-00279-CCA-R3-CD, 1999 WL 1097832, at *4 (Tenn. Crim. App. Nov. 22, 1999)). This court has explained that "'[t]he law makes no nice or refined distinction as to the manner or method of a flight; it may be open, or it may be a hurried or concealed departure, or it may be a concealment within the jurisdiction.'" *Whittenmeir*, 725 S.W.2d at 688 (quoting *Rogers*, 455 S.W.2d at 187). "It is proper for the trial court to instruct the jury on flight when the issue has been raised by the proof." *State v. Jason Charles Austin*, No. E2010-00796-CCA-R3-CD, 2012 WL 2445058, at *15 (Tenn. Crim. App. June 28, 2012), *perm. app. denied*

(Tenn. Nov. 20, 2012) (citing *State v. Kendricks*, 947 S.W.2d 875, 885-86 (Tenn. Crim. App. 1996)).

After review, we determine that there was sufficient evidence of flight to justify the flight instruction. Investigator Moran confirmed that when he interviewed appellant, appellant stated, "'[F]or about four days ago or something[,] I was down there under a bridge with some people,'" and that he "'hung out at the Mission pretty regularly.'" The evidence also showed that appellant responded, "Maybe," to Investigator Moran's questions about appellant's being near the Mission on the date in question. Investigator Moran affirmed that toward the end of the interview, appellant told him that he was unsure about his whereabouts on Tuesday, the day of the attempted rape. The evidence showed that appellant asserted that he had been at the Wolfenbargers' address "since the 4th or 5th" and that the incident in question occurred on October 5, 2010. Investigator Moran testified that Mr. Wolfenbarger said that in the days preceding October 11, appellant behaved nervously when near police cars and that Mr. Wolfenbarger referenced appellant's hiding out at their home. Finally, Mr. and Mrs. Wolfenbarger testified that appellant stayed at their home until the following Sunday. If the jury determined that appellant was actually at the scene, there was sufficient evidence to show that appellant left the scene, as shown by his being at the Wolfenbargers' home at some point that week. There was also sufficient evidence from which the jury could infer a hiding out because appellant stayed with the Wolfenbargers for the duration of the week. "Any contradictory evidence that serves to rebut the [S]tate's proof merely raises a question for the jury to resolve." *Terrance Wilks*, 1999 WL 1097832, at *4 (citing *Hall v. State*, 584 S.W.2d 819, 821 (Tenn. Crim. App. 1979)). Appellant is without relief as to this issue.

## B. Unsequestered Witness

At trial, the State called Vickie Miller, who testified that Mrs. Wolfenbarger had a reputation for untruthfulness, even though Ms. Miller was present in the courtroom during the first day of trial when Mrs. Wolfenbarger testified. Appellant contends that the trial court erred in allowing this testimony. The State responds that the trial court was within its discretion in allowing her testimony.

Rule 615 of the Tennessee Rules of Evidence states:

> At the request of a party the court shall order witnesses, including rebuttal witnesses, excluded at trial or other adjudicatory hearing. In the court's discretion, the requested sequestration may be effective before voir dire, but in any event shall be effective before opening statements. The court shall order all persons not to disclose by any means to excluded witnesses any

-8-

live trial testimony or exhibits created in the courtroom by a witness. This rule does not authorize exclusion of (1) a party who is a natural person, or (2) a person designated by counsel for a party that is not a natural person, or (3) a person whose presence is shown by a party to be essential to the presentation of the party's cause. This rule does not forbid testimony of a witness called at the rebuttal stage of a hearing if, in the court's discretion, counsel is genuinely surprised and demonstrates a need for rebuttal testimony from an unsequestered witness.

"Rule 615 does not prescribe a specific sanction for its violation. . . . The trial court may, as a sanction, exclude the testimony of a witness who hears other testimony while subject to a sequestration order." *State v. Black*, 75 S.W.3d 422, 424 (Tenn. Crim. App. 2001) (citations omitted). The decision whether to allow or exclude testimony under the sequestration rule is a matter within the trial court's discretion and will not be reversed absent an abuse of discretion that prejudiced the complaining party. *State v. Chadwick*, 750 S.W.2d 161, 166 (Tenn. Crim. App. 1987) (citing *McCravey v. State*, 455 S.W.2d 174, 176 (Tenn. Crim. App. 1970)).

In response to appellant's objection to Ms. Miller's testimony, the prosecutor stated, "I didn't know . . . whether or not Ms. Miller had an opinion about Ms. Wolfenbarger's reputation for veracity . . . until after Mrs. Wolfenbarger . . . testified." The prosecutor also stated that she was surprised by Mrs. Wolfenbarger's unequivocal answers at trial and that she "really expected [Mrs. Wolfenbarger] to have an explanation [for her inconsistent statements] and not a categorical denial." The trial court allowed Ms. Miller to testify. The trial court did not abuse its discretion by allowing Ms. Miller's testimony in light of the State's surprise at Mrs. Wolfenbarger's testimony and the late notice of Ms. Miller's knowledge regarding Mrs. Wolfenbarger's reputation. Furthermore, we conclude that appellant has failed to show that he was prejudiced by Ms. Miller's testimony. There is no evidence that hearing the testimony at trial altered Ms. Miller's testimony, and the State presented Charles Moore, Mrs. Wolfenbarger's uncle, who also testified that Ms. Wolfenbarger had a reputation for being untruthful. Appellant is without relief as to this issue.

## C. Sufficiency of the Evidence

Finally, appellant argues that there was insufficient evidence to support his attempted rape conviction. The standard for appellate review of a claim challenging the sufficiency of the State's evidence is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (citing *Johnson*

*v. Louisiana*, 406 U.S. 356, 362 (1972)); *see* Tenn. R. App. P. 13(e); *State v. Davis*, 354 S.W.3d 718, 729 (Tenn. 2011). To obtain relief on a claim of insufficient evidence, appellant must demonstrate that no reasonable trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319. This standard of review is identical whether the conviction is predicated on direct or circumstantial evidence, or a combination of both. *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011); *State v. Brown*, 551 S.W.2d 329, 331 (Tenn. 1977).

On appellate review, "'we afford the prosecution the strongest legitimate view of the evidence as well as all reasonable and legitimate inferences which may be drawn therefrom.'" *Davis*, 354 S.W.3d at 729 (quoting *State v. Majors*, 318 S.W.3d 850, 857 (Tenn. 2010)); *State v. Williams*, 657 S.W.2d 405, 410 (Tenn. 1983); *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978). In a jury trial, questions involving the credibility of witnesses and the weight and value to be given the evidence, as well as all factual disputes raised by the evidence, are resolved by the jury as trier of fact. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997); *State v. Pruett*, 788 S.W.2d 559, 561 (Tenn. 1990). This court presumes that the jury has afforded the State all reasonable inferences from the evidence and resolved all conflicts in the testimony in favor of the State; as such, we will not substitute our own inferences drawn from the evidence for those drawn by the jury, nor will we re-weigh or re-evaluate the evidence. *Dorantes*, 331 S.W.3d at 379; *Cabbage*, 571 S.W.2d at 835; *see State v. Sheffield*, 676 S.W.2d 542, 547 (Tenn. 1984). Because a jury conviction removes the presumption of innocence that appellant enjoyed at trial and replaces it with one of guilt at the appellate level, the burden of proof shifts from the State to the convicted appellant, who must demonstrate to this court that the evidence is insufficient to support the jury's findings. *Davis*, 354 S.W.3d at 729 (citing *State v. Sisk*, 343 S.W.3d 60, 65 (Tenn. 2011)).

Rape, as charged here, is the "unlawful sexual penetration of a victim by the defendant . . . [when] [f]orce or coercion is used to accomplish the act." Tenn. Code Ann. § 39-13-503(a)(1). A person is guilty of criminal attempt who,

> acting with the kind of culpability otherwise required for the offense[,] . . . [a]cts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a)(3).

Viewed in the light most favorable to the State, the evidence shows that appellant approached the victim in a wooded area near the homeless shelter, seized her from behind,

and touched her breasts while attempting to remove her shirt. He then sought to force her to the ground, telling her, "I'll f*** you in the a** and make you like it." The victim kicked appellant in the knee, causing him to release her. As she fled, she looked back, recognized appellant, and saw that appellant's penis was exposed. The victim called the police immediately after the incident. She identified appellant as "Snodgrass" and made a photographic identification of appellant. Given this evidence, a jury could have found the essential elements of attempted rape beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319 (citing *Johnson*, 406 U.S. at 362). Therefore, there was sufficient evidence to support appellant's attempted rape conviction, and he is without relief as to this issue.

## CONCLUSION

Based upon our review of the record, the arguments of the parties, and the applicable law, we affirm the judgment of the trial court.

_____
ROGER A. PAGE, JUDGE