IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs January 17, 2018

**STATE OF TENNESSEE v. CHRISTOPHER D. LINSEY**

**Appeal from the Circuit Court for Montgomery County
No. CC15-CR-544   William R. Goodman, III, Judge**

_____

**No. M2017-00059-CCA-R3-CD**

_____

In May 2015, the Montgomery County Grand Jury indicted the Defendant, Christopher D. Linsey, for possession of 0.5 grams or more of cocaine with the intent to sell or deliver, simple possession of marijuana, possession of drug paraphernalia, and resisting arrest.  Following a jury trial, the Defendant was convicted as charged, and the trial court sentenced the Defendant, as a Range III persistent offender, to a total effective sentence of twenty-three years.  On appeal, he contends that the evidence presented at trial was insufficient to support his conviction for possession of 0.5 grams or more of cocaine with the intent to sell or deliver, and he challenges his sentence as excessive.  Upon review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL, P.J., and TIMOTHY L. EASTER, J., joined.

Gregory D. Smith (on appeal); and Melissa King, Clarksville, Tennessee (at trial), for the appellant, Christopher D. Linsey.

Herbert H. Slatery III, Attorney General and Reporter; Ruth Anne Thompson, Senior Counsel; John W. Carney, District Attorney General; and Dan Brollier, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## I. Factual and Procedural Background

On February 24, 2015, Officer Jack Williams of the Clarksville Police Department (CPD) responded to a call of a "possible trespasser" at a residence on Wesley Drive in Clarksville. Upon arrival, Officer Williams met with the caller, David Reed, III, and walked around Mr. Reed's property looking for evidence of the trespasser. While walking through the back yard of Mr. Reed's residence, Officer Williams noticed the smell of burnt marijuana. Although Mr. Reed said that he did not smell anything, other officers on the scene stated that they too smelled marijuana. Officer Williams walked toward the house next door, and the smell of burnt marijuana became stronger. Finding no evidence of a trespasser, the officers left Mr. Reed's residence.

Later that evening, Officer Williams and two other officers conducted a knock and talk at the residence next door to Mr. Reed's. As he approached the front door, Officer Williams again smelled the odor of marijuana and noticed someone looking out the front window at him. At that time, the owner of the residence, Tiffany Holliday, came out of the house and quickly closed the front door behind her. When Ms. Holliday asked what the officers were doing there, Officer Williams asked her about the smell of marijuana and asked for consent to search the house, which Ms. Holliday denied. Officer Williams asked, "Who else [is] in the residence?" Ms. Holliday stated that her brother, Timothy Holliday, and her five children were inside. Officer Williams asked if he could step inside the house to speak with her, but Ms. Holliday stated that "she could bring everybody outside" and told the officer that her friend "Crook" was also in the residence. Officer Williams again asked to step inside to talk because the weather was "below freezing" and he did not want her to bring her children outside in the cold weather, and Ms. Holliday allowed the officers into the residence. Once inside, Officer Williams could smell the odor of burnt marijuana and asked Ms. Holliday to gather the occupants of the residence into the living room. The Defendant and four other men came out of a "bonus room," which was a converted garage at the back of the residence. Officer Williams obtained consent from Ms. Holliday for a "protective sweep" of the residence to ensure that no one else was inside the home. He then contacted the CPD's "on-call drug agent," Agent Robert DelGiorno, and advised him of the situation. Agent DelGiorno said that he would apply for a search warrant and requested that Officer Williams wait with the occupants of the residence in the living room.

Based on his discussions with Officer Williams, Agent DelGiorno prepared an application for a search warrant, which was granted by a judge. The search warrant covered not only the residence but also included a search of the individuals inside the residence, including the Defendant. Agent DelGiorno and three other drug agents—Will

Evans, Griffie Briggs, and Lon Chaney—arrived at Ms. Holliday's residence with a search warrant. Agent DelGiorno initially spoke to Ms. Holliday and explained to her that he had a search warrant. He then instructed the other agents to search the residence. While searching the bonus room, the agents looked under the chairs and couches in the room. Agent Evans found a small baggie containing a "white powdery substance," which had been "stuffed" in the side of a couch. The agents also found a "marijuana grinder," a digital scale, and five or six marijuana "roaches."[1] In the back bedroom, a second digital scale was recovered. Agent DelGiorno took photographs of the contraband, and he conducted a field test of the roaches, which indicated that the roaches contained marijuana. Agent DelGiorno stated that the baggies found in the jacket worn by the Defendant were commonly used in the distribution or sale of narcotics, specifically crack cocaine and marijuana. One of the digital scales was found in the bonus room. He testified that digital scales are commonly used to weigh narcotics.

After the agents completed their search of every room except the living room, Agent DelGiorno asked Officer Williams to move the occupants to the bonus room. Before moving the Defendant, Officer Williams briefly searched him and found nothing on the Defendant's person. However, Officer Williams then searched a jacket lying on top of a table that the Defendant had been wearing when officers first arrived. Officer Williams found "multiple clear plastic baggies" in a front pocket of the jacket. Based on his training, Officer Williams knew that the baggies were commonly used to package narcotics and turned them over to Agent DelGiorno. He then escorted the Defendant to the bonus room.

Because of the number of potential defendants at the residence, Agent DelGiorno decided to conduct strip searches[2] of the occupants before transporting anyone to the police department. Agent DelGiorno and Agent Chaney conducted a strip search of the Defendant first. They instructed the Defendant to remove one piece of clothing at a time until he was "completely disrobed." At this time, Agent Evans entered the bonus room and "saw [a] plastic baggie protruding from [the Defendant's] butt cheeks." Agent Evans knew from his training that defendants commonly conceal narcotics between their butt cheeks. He told the Defendant, ". . . I can see it sticking out of your butt cheeks, just go ahead and pull it out for us." Agent DelGiorno also saw the baggie and reached over to detain the Defendant, but the Defendant pulled away from Agent DelGiorno and lunged towards the back door. Hearing "a commotion," Agent Briggs and Officer Williams entered the bonus room and saw the Defendant on the ground with three officers

---

[1] Agent DelGiorno testified at trial that a "roach" was the remnant of a marijuana blunt or cigarette.

[2] According to Agent DelGiorno, a strip search required the removal of "all the outer clothing of the person and checking the genitals and the buttocks of the person" and was conducted in order to look for concealed contraband.

attempting to handcuff the Defendant. The Defendant had "locked up his hands up against his body so the agents could not put his hands into handcuffs." Additionally, the Defendant's "buttocks area was clenched very tightly and then he was kicking . . . his lower extremity of his legs." After a short struggle, the Defendant was placed into handcuffs, and Agent Briggs observed "a small bag containing a white crystalline substance[,]" laying on the ground in the area of the couch that had just been searched. Agent Briggs photographed and collected the baggie and the Defendant's cell phone. The officers helped the Defendant put back on his clothes, but they "duck taped his pants" at the ankles because they believed that "there may still be contraband inside his butt cheeks." The Defendant was then transported to the jail, where another strip search was conducted.

The evidence recovered in the execution of the search warrant was sent to the Tennessee Bureau of Investigation (TBI) Crime Laboratory for testing. Special Agent William Stanton analyzed the small baggie containing a white crystalline substance that was found on the ground under the couch after the Defendant's strip search. Agent Stanton determined that the substance inside the baggie contained cocaine base and weighed 1.98 grams.[3]

CPD Detective Deborah Kolofsky obtained a search warrant for the Defendant's cell phone. Detective Kolofsky performed a forensic examination of the cell phone and prepared an extraction report, which included text messages sent from and received by the Defendant's cell phone. Agent Chaney, who in the course of his work as a narcotics agent was familiar with "street slang" associated with drug sales, reviewed the extraction report provided by Detective Kolofsky. Upon review, he identified several text message exchanges that contained slang words associated with the drug trade. In one exchange, the Defendant received a text message that stated, "Bring me a 40 of the new when we get there. If not, long." Agent Chaney testified at trial that the request for "a 40" meant that a buyer wanted four-tenths of a gram of crack cocaine for forty dollars. There was a second message several days later from the same person again stating, "Bring me a 40[.]" Agent Chaney explained that it was typical for drug customers to request the same amount from a dealer each time. Another text message sent to the Defendant contained the phrase "loud 900." According to Agent Chaney, "'Loud' is a common slang term for high-grade marijuana and nine hundred would indicate a half pound price for that." Another incoming message asked the Defendant, "What you letting[sic] 3 5 go for?" Agent Chaney explained that the term "3 5" referred to the weight of an eight-ball, which was commonly used in the selling of marijuana and cocaine. In another exchange, an

---

[3] Agent Stanton testified at trial that the second baggie found inside the couch had a gross weight of 0.77 grams, but the substance inside the bag was not analyzed based on TBI protocols. It does not appear that the Defendant was charged with an offense based on this evidence.

incoming message asked the Defendant, "You got some smoke?" According to Agent Chaney, "smoke" referred to marijuana. Finally, the extraction report contained an exchange in which the Defendant asked, "How was it?" The Defendant received a response that said, "It wasn't bad. It wasn't any p***y work." Agent Chaney stated that the term "work" referred to crack cocaine.

Agent Chaney was familiar with the street value of crack cocaine in Clarksville based on his training and experience. He testified that crack cocaine is priced on a ten-scale, with a tenth (0.1) of a gram costing ten dollars. He stated that in Clarksville the most common and popular order for crack cocaine a twenty dollar crack rock—or 0.2 grams. Agent Chaney said that possessing 2.0 grams was "generally indicative of sales where they can break that rock up and sell [twenty] rocks out of it." He stated that the 1.98 grams of crack cocaine found in the Defendant's possession had a street value of about $200. Agent Chaney also testified that the baggies found in the Defendant's jacket were consistently used in drug transactions and, specifically, in the sale of crack cocaine. Based on this evidence, a jury convicted the Defendant of possession of 0.5 grams or more of cocaine with the intent to sell or deliver, simple possession of marijuana, possession of drug paraphernalia, and resisting arrest on November 24, 2015.

At a sentencing hearing conducted December 17, 2015, the State introduced a copy of the Defendant's presentence report and certified judgments of conviction establishing the Defendant's prior convictions for the following felony offenses:

| Conviction Offense | Classification | Date of Conviction |
|---|---|---|
| Tampering with evidence | Class C felony | 04/22/2015 |
| Possession of more than 0.5 grams of cocaine for resale | Class B felony | 09/18/2003 |
| Possession of more than 0.5 ounces of marijuana for resale | Class E felony | 09/18/2003 |
| Aggravated robbery | Class B felony | 10/13/2000 |
| Theft of property over $1,000 | Class D felony | 04/09/1998 |
| Aggravated burglary | Class C felony | 04/09/1998 |
| Possession of cocaine with intent to deliver | Class C felony | 05/25/1994 |

The presentence report also indicated that the Defendant had misdemeanor convictions for simple possession of marijuana, simple possession of cocaine, violation of open container law, contributing to the delinquency of a minor, evading arrest, and vandalism up to $500. The Defendant acknowledged to the presentence report writer that he began smoking marijuana at the age of eleven and said that he smoked "every[ ]day."

The Defendant filed a written statement with the trial court. The Defendant's wife, Christie Harper, testified that she and the Defendant were married on April 20, 2015, but that they had been together "[o]ff and on" for the past fourteen years. She stated that the Defendant had never attended drug rehabilitation but that it was something she and the Defendant often talked about. She believed that the Defendant could be successfully rehabilitated if he completed an in-patient drug program. She stated that the Defendant had been "in and out of jail and prison" but that he needed drug rehabilitation. She stated that the Defendant had a daughter, and he was already serving a twelve-year sentence.

In sentencing the Defendant, the trial court found that the Defendant was a Range III persistent offender based upon the judgments entered by the State and that the sentence range for possession of 0.5 grams or more of cocaine with the intent to sell or deliver was twenty to thirty years. Accordingly, the trial court found that the Defendant was not eligible for probation for this offense. The trial court found that no mitigating factors applied but that several enhancement factors applied. Specifically, the trial court concluded that the Defendant had a previous history of criminal convictions or criminal behavior in addition to that necessary to establish the appropriate range; the Defendant, before trial or sentencing, had failed to comply with the conditions of a sentence involving release into the community; and that at the time that the felony was committed the Defendant was released on bail or pretrial release. Based on these factors, the trial court sentenced the Defendant to serve twenty-three-years' incarceration for possession of 0.5 grams or more of cocaine with the intent to sell or deliver; eleven months and twenty-nine days for possession of marijuana; eleven months and twenty-nine days for possession of drug paraphernalia; and six months for resisting arrest. The trial court ordered all counts to run concurrently with one another but consecutively to the Defendant's twelve-year sentence in a prior case.

No motion for new trial was filed following the entry of the Defendant's judgments of conviction on December 21, 2015. On November 23, 2016, counsel for the Defendant filed a motion to withdraw from the Defendant's case, which the trial court granted on December 12, 2016. On January 12, 2017, the Defendant filed a pro se "notice of delayed appeal" with this court and requested that the court appoint counsel and waive the timeliness requirement under Rule 4 of the Tennessee Rules of Appellate Procedure. In an order filed May 1, 2017, this court remanded the matter to the trial court to determine whether the Defendant remained indigent and, if so, to appoint counsel.[4] This court also agreed to waive the thirty-day deadline for the filing of a notice of appeal in the interest of justice. *See* Tenn. R. App. P. 4(a). This appeal follows.

---

[4] The record reflects that on May 11, 2017, the trial court appointed counsel to represent the Defendant in this appeal.

## II. Analysis

### *A. Sufficiency of the Evidence*

On appeal, the Defendant challenges the sufficiency of the evidence as it relates to his conviction for possession of 0.5 grams or more of cocaine with the intent to sell or deliver. He argues that "[w]hile evidence clearly indicated that [he] possessed a single rock of crack cocaine, there is no indication or evidence that the rock of crack in [the Defendant's] rectum was meant for commercial use." In other words, the State did not establish the Defendant's intent to sell or deliver the crack cocaine. The State responds that the evidence is sufficient to sustain the Defendant's conviction for possession of over 0.5 grams of cocaine with intent to sell or deliver. We agree with the State.

Our standard of review for a sufficiency of the evidence challenge is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original); *see also* Tenn. R. App. P. 13(e). Questions of fact, the credibility of witnesses, and weight of the evidence are resolved by the fact finder. *State v. Bland*, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh the evidence. *Id.* Our standard of review "is the same whether the conviction is based upon direct or circumstantial evidence." *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted).

A guilty verdict removes the presumption of innocence, replacing it with a presumption of guilt. *Bland*, 958 S.W.2d at 659; *State v. Tuggle*, 639 S.W.2d 913, 914 (Tenn. 1982). The defendant bears the burden of proving why the evidence was insufficient to support the conviction. *Bland*, 958 S.W.2d at 659; *Tuggle*, 639 S.W.2d at 914. On appeal, the "State must be afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn therefrom." *State v. Vasques*, 221 S.W.3d 514, 521 (Tenn. 2007).

It is an offense to knowingly possess a controlled substance with intent to manufacture, deliver, or sell. Tenn. Code Ann. § 39-17-417(a)(4) (2015). A violation of this section with respect to 0.5 grams or more of cocaine, a Schedule II controlled substance, Tenn. Code Ann. § 39-17-408(b)(4) (2015), is a Class B felony. Tenn. Code Ann. § 39-17-417(c)(1) (2015). A conviction for this offense may be had upon either actual or constructive possession. *State v. Shaw*, 37 S.W.3d 900, 903 (Tenn. 2001). Constructive possession is the ability to reduce an object to actual possession. *State v. Brown*, 823 S.W.2d 576, 579 (Tenn. Crim. App. 1991) (quoting *State v. Cooper*, 736

S.W.2d 125, 129 (Tenn. Crim. App. 1987)). With regard to a determination of intent to sell or deliver, proof of intent usually consists of circumstantial evidence and the inferences that can be reasonably drawn from that evidence. *See Hall v. State*, 490 S.W.2d 495, 496 (Tenn. 1973); *State v. Washington*, 658 S.W.2d 144, 146 (Tenn. Crim. App. 1983) (observing that a jury may derive a defendant's intent from both direct and circumstantial evidence). It is permissible for the jury to infer from the amount of a controlled substance or substances possessed by the defendant, along with other relevant facts surrounding the arrest, that the controlled substance or substances were possessed with the purpose of selling or delivering. Tenn. Code Ann. § 39-17-419 (2015).

In the present case, the evidence showed that during a strip search of the Defendant, Agent Evans and Agent DelGiorno saw a plastic baggie in between the Defendant's butt cheeks. When the agents requested that the Defendant remove the item, he resisted and lunged for the back door. Following a short struggle while agents attempted to handcuff the Defendant, Agent Briggs observed "a small bag containing a white crystalline substance," laying on the ground in the area of the couch that had just been searched. A forensic scientist with the TBI analyzed the substance and determined that it was cocaine base and that it weighed 1.98 grams. Agent Chaney testified that 1.98 grams of crack cocaine had a street value of approximately $200. Agent Chaney further testified that that possessing 2.0 grams was "generally indicative of sales where they can break that rock up and sell [twenty] rocks out of it." Agents also discovered items commonly used in the drug trade, including additional plastic baggies inside a jacket worn by the Defendant and a digital scale located in the bonus room where the Defendant had been when Officer Williams first arrived. Finally, Agent Chaney testified that many of the text messages retrieved from the Defendant's cell phone indicated that the Defendant was selling or delivering drugs. When viewed in the light most favorable to the State, the evidence overwhelmingly supports the Defendant's conviction for possession of 0.5 grams or more of cocaine with intent to sell or deliver.

### B. Sentencing

The Defendant also asserts that the trial court's imposition of a twenty-three-year sentence consecutive to his prior twelve-year sentence was excessive because both an enhancement factor and consecutive sentencing factor relied upon by the trial court were based upon a felony conviction that was later overturned on appeal. According to the Defendant's brief, he was on bail in Montgomery County Circuit Court case number 41400689 when he committed the instant offenses. The Defendant was subsequently convicted of tampering with evidence and simple possession of marijuana arising out of the prior case; however, his conviction for tampering with evidence was overturned on appeal. *See State v. Christopher Demotto Linsey*, No. M2015-01851-CCA-R3-CD, 2016 WL 5416369, at *5 (Tenn. Crim. App. Sept. 27, 2016), *no perm. app. filed*. The

Defendant argues that because two of the three enhancement factors relied upon by the trial court involved the Defendant's "not complying with the terms of bond/release into the community" and his conviction for tampering with evidence was overturned, he is entitled to resentencing. The State responds that the trial court properly sentenced the Defendant to twenty-three years' incarceration and properly ordered the sentence to be served consecutively to the Defendant's prior sentence. We again agree with the State.

When the record clearly establishes that the trial court imposed a sentence within the appropriate range after a "proper application of the purposes and principles of our Sentencing Act," this court reviews the trial court's sentencing decision under an abuse of discretion standard with a presumption of reasonableness. *State v. Bise*, 380 S.W.3d 682, 707 (Tenn. 2012). The party challenging the sentence on appeal bears the burden of establishing that the sentence was improper. Tenn. Code Ann. § 40-35-401 (2015), Sentencing Comm'n Cmts.

To facilitate meaningful appellate review, the trial court must state on the record the factors it considered and the reasons for imposing the sentence chosen. Tenn. Code Ann. § 40-35-210(e) (2015); *Bise*, 380 S.W.3d at 706. While the trial court should consider enhancement and mitigating factors, such factors are advisory only. *See* Tenn. Code Ann. § 40-35-114 (Supp. 2015); *see also Bise*, 380 S.W.3d at 699 n.33, 704; *State v. Carter*, 254 S.W.3d 335, 346 (Tenn. 2008). We note that "a trial court's weighing of various mitigating and enhancement factors [is] left to the trial court's sound discretion." *Carter*, 254 S.W.3d at 345. In other words, "the trial court is free to select any sentence within the applicable range so long as the length of the sentence is 'consistent with the purposes and principles of [the Sentencing Act].'" *Id.* at 343. A trial court's "misapplication of an enhancement or mitigating factor does not invalidate the sentence imposed unless the trial court wholly departed from the 1989 Act, as amended in 2005." *Bise*, 380 S.W.3d at 706. "[Appellate courts are] bound by a trial court's decision as to the length of the sentence imposed so long as it is imposed in a manner consistent with the purposes and principles set out in sections -102 and -103 of the Sentencing Act." *Carter*, 254 S.W.3d at 346.

In determining a specific sentence within a range of punishment, the trial court should consider, but is not bound by, the following advisory guidelines:

(1) The minimum sentence within the range of punishment is the sentence that should be imposed, because the general assembly set the minimum length of sentence for each felony class to reflect the relative seriousness of each criminal offense in the felony classifications; and

(2) The sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors set out in §§ 40-35-113 and 40-35-114.

Tenn. Code Ann. § 40-35-210(c) (2015).

## 1. Sentence Length

In this case, the trial court properly applied the principles and purposes of sentencing and explained its reasoning on the record. As such, we review the trial court's sentencing decision for an abuse of discretion with a presumption of reasonableness.

The trial court sentenced the Defendant, as a Range III persistent offender, to a term of twenty-three years. On appeal, the Defendant does not challenge the trial court's finding that he is a Range III offender. Possession of 0.5 grams or more of cocaine with intent to sell or deliver is a Class B felony, *see* Tenn. Code Ann. § 39-17-417(c)(1), and as a Range III persistent offender, the Defendant's sentence range was twenty to thirty years. Tenn. Code Ann. § 40-35-112(c)(2). In determining the specific sentence within the range of punishment, the trial court found that no mitigating factors applied but that several enhancement factors applied. Specifically, the trial court found that the Defendant had a previous history of criminal convictions or criminal behavior, in addition to those necessary to establish the appropriate range; the Defendant, before trial or sentencing, had failed to comply with the conditions of a sentence involving release into the community; and that at the time that the felony was committed the Defendant was released on bail or pretrial release.

The evidence presented at the sentencing hearing supports these enhancement factors. Both the presentence report and the certified judgments of conviction clearly demonstrate that the Defendant has a previous history of criminal convictions beyond that necessary to establish the Defendant's sentencing range. *See* Tenn. Code Ann. § 40-35-114(1). Additionally, the presentence report indicates that, at the time that the felony was committed in the instant case, the Defendant was on bail and awaiting trial for multiple offenses committed on November 8, 2013. *See* Tenn. Code Ann. § 40-35-114(13)(A). Specifically, the Defendant was charged in case number 41400689 with tampering with evidence, possession of over 0.5 grams of cocaine for resale, simple possession of marijuana, possession of heroin, and simple possession of alprazolam. *Christopher Demotto Linsey*, 2016 WL 5416369, at *1. After trial, a jury found the Defendant guilty of felony tampering with evidence and simple possession of marijuana, for which he received an effective twelve-year sentence. *Id.* In an opinion filed after the Defendant's sentencing hearing in the instant case, this court found that the evidence was insufficient

- 10 -

to support the Defendant's conviction for tampering with evidence but affirmed the simple possession conviction. *Id.* at *5.

The Defendant contends that, once his conviction for tampering with evidence was reversed, enhancement factor 13 no longer applied. That section of the code states in part: "[A]t the time the felony was committed, one (1) of the following classifications was applicable to the defendant: Released on bail or pretrial release, *if the defendant is ultimately convicted of the prior misdemeanor or felony*." Tenn. Code Ann. § 40-35-114(13)(A) (emphasis added). In this case, although the felony conviction was overturned, the Defendant's misdemeanor conviction for simple possession was not. Accordingly, the trial court properly applied enhancement factor 13.

The final enhancement factor relied upon by the trial court was that the Defendant, before trial or sentencing, failed to comply with the conditions of a sentence involving release into the community. *See* Tenn. Code Ann. § 40-35-114(8). At the sentencing hearing, the prosecutor announced that the Defendant had violated probation on five separate occasions. Although this information was not contained in the presentence report, the Defendant acknowledged in his statement to the trial court that he had "been on probation a couple of times and [] didn't do so good[.]" We also note that this court has previously affirmed the trial court's revocation of the Defendant's community corrections sentence, which he was serving for aggravated robbery, aggravated burglary, and theft of property over $1,000. *State v. Christopher Demotto Linsey*, No. M2003-02420-CCA-R3-CD, 2004 WL 3044900, at *1 (Tenn. Crim. App. Dec. 30, 2004), *perm. app. denied* (Tenn. Mar. 28, 2005). Thus, we conclude that the trial court appropriately considered enhancement factor 8.

The Defendant has not shown that the trial court abused its discretion when imposing a twenty-three-year sentence for possession of 0.5 grams or more of cocaine with intent to sell or deliver and is not entitled to relief.

## 2. Mandatory Consecutive Sentence

Tennessee Code Annotated section 40-20-111(b) provides that if a defendant commits a felony while released on bail and is convicted of both offenses, the trial judge has no discretion as to whether the sentences shall run concurrently or cumulatively but must order that the sentences run cumulatively. Tenn. Code Ann. § 40-20-111(b). Similarly, Tennessee Rule of Criminal Procedure 32(c)(3)(C), which mandates consecutive sentences when a defendant commits a felony while released on bail and is eventually convicted of both offenses, provides:

(3) Mandatory Consecutive Sentences.  When a defendant is convicted of multiple offenses from one trial or when the defendant has additional sentences not yet fully served as the result of convictions in the same or other courts and the law requires consecutive sentences, the sentence shall be consecutive whether the judgment explicitly so orders or not.  This rule shall apply:

. . .

          (C) to a sentence for a felony committed while the defendant was released on bail and the defendant is convicted of both offenses[.]

Tenn. R. Crim. P. 32(c)(3)(C).

At the time the Defendant committed the offenses in this case, he was on bail for the offenses committed in case number 41400689.  The Defendant was convicted of a felony offense in this case, *i.e.,* possession of over 0.5 grams of cocaine with intent to sell or deliver, and was convicted of tampering with evidence and simple possession in case number 41400689.  Thus, the trial court was required by law to order that the Defendant's twenty-three-year sentence run consecutively to his prior twelve-year sentence.  *See* Tenn. Code Ann. § 40-20-111(b); Tenn. R. Crim. P. 32(c)(3)(C). Although the Defendant's tampering with evidence conviction was later overturned, neither Tennessee Code Annotated section 40-20-111(b) nor Rule 32(c) specifies that the prior conviction must be a felony conviction.  The Defendant is not entitled to relief.

### III. Conclusion

For the aforementioned reasons, the judgments of the trial court are affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE

- 12 -